Ruffin, C. J.
 

 The court is of opinion, that it was properly left to the jury to determine, whether the script in this case was deposited by the party deceased among his valuable papers with the intention, that his estate should thereby pass as therein expressed — in other words, as his will. The argument against that position is, that the statute of wills makes a paper, all in the handwriting of the deceased, and with his name subscribed thereto or inserted in some part of it, and found among his valuable papers or effects after his death, a good will.’ So that when those circumstances are established, the paper
 
 is in law
 
 a will, without more proof, and notwithstanding any presumptions or proofs to the contrary. For, it is said, if that be not so, then every thing, which the statute requires with respect to an holograph may exist, and yet the jury be at liberty to find the script not to be a will. The answer to the argument is, that the statute does not make every paper, having the requisites mentioned, a good will; but it says, that no last will or testament shall be good,
 
 unless
 
 such last will be found, and so forth. After all, then, a paper written by a party deceased, with his name in it, and duly found, is not necessarily a good will. For, what does the statute say shall be so found in order to its being a
 
 good
 
 will ? Why, a will in writing. Therefore, of necessity it must in every case be enquired, whether that paper be the will of the party deceased ; whether he had capacity to make a will, and meant to dispose of his estate by the particular script propounded—
 
 *687
 
 Such is the law even as to attested wills ; for it is competent to shew, by subsequent declarations of the supposed testator, that he
 
 never
 
 assented to the instrument as his will, but that it was obtained by duress or fraud.
 
 Howell
 
 v.
 
 Barden
 
 3 Dev. 442. It is true, that when a.paper has'been attested as a will, or lodged with another person for safe keeping, there is no occasion for further proof of publication ; for those facts amount to express publication, of themselves. Therefore the instructions to the jury upon such evidence would not be that, in addition to the inquiry, whether those facts were true, they should inquire, whether the party deceased intended thereby to make the instrument his will. Such an intention is the necessary legal result from the facts proved, which amount to an express publication of the paper as a.will. Hence the proper instruction would be simply, that, if the jury believed the witnesses, they ought to find the publication, that is, that the party deceased declared
 
 that paper to be his will.
 
 But when there is no such express evidence of publication, the legislature did not mean to dispense with all evidence, of it, or to make every paper, testamentary in its provisions, that should be found among the valuable effects of the deceased, conclusively a published and good will. For suppose half a dozen such papers, inconsistent in their dispositions and all found together — some perfect by being finished and executed, and others more or less imperfect — which is or are to be received as
 
 the
 
 will of the party deceased ? The real object of that part of'the act, which relates to holographic papers, was merely to dispense with attestation, as, evidence of publication; and leave the case open to other evidence of it, as testaments of personalty were before the Ordinary in England ; not altogether, indeed, in the same full latitude, but in those cases, in which the script was lodged by him with another for safe keep- " ing or was thus kept by himself among his own papers and effects of value. In those cases the paper may be pronounced a good will. Without those requisites it cannot be ; for they are rendered indispensable evidence of publication by the statute.
 
 St. John’s Lodge
 
 v.
 
 Callender
 
 4 Ired. 335. But
 
 *688
 
 though indispensable, they are not conclusive evidence of publication, under the statute, more than they before were as to wills of personalty in the ecclesiastical courts. It is
 
 prima j-acie
 
 sufficient; but it never could have been meant, that it should over-rule every thing else. The words do not import that, as has been already remarked. They are not, that a paper of a certain description shall be deemed a good will; but that no paper, no matter how clearly the
 
 animus testandi
 
 and and the actual publication may be proved by witnesses or other papers, shall be good as a will, unless it be of the description given in the statute. If, indeed, it be of that character, then it is
 
 prima facie
 
 to be received as the party’s will. But it must be open to one in interest to shew, that the supposed testator had not capacity to make a will, that he did not put this among his papers, but that it was done surreptitiously by some one else, or that, the party deceased, so far from treating the paper as his will, declared that it was not, and that he had no will. So there must here, as in the cases before the ecclesiastical courts before alluded to, be presumptions for or against a paper, according to its adaptation to the estate and family, or circumstances of the maker of it, or its state and degree of perfection or imperfection in point of form, or the circumstances which caused its imperfection. There is no doubt, for example, that a testament is good in England, though imperfect in that it was not executed, provided it sufficiently appear, that it expressed the wishes of the party deceased, and the execution was prevented by the act of God. Now, suppose a holograph- will here, with an attestation clause, but not executed by signing and attestation, and it appeared that, when the party wrote it, he said, he would execute it, and have it attested the next day, and in the mean while he locked it up in his desk with his money and deeds, and died suddenly that night: it would seem, that this paper, with the party’s name in it, and in other respects conforming -to the act, must be a good will, notwithstanding that degree of imperfection, which consists in the want of the party’s signature and the attestation, which it was intended should have
 
 *689
 
 been added, and, no doubt, would have been added, but for God’s visitation. So, if a person is in the act of writing his will, and is taken suddenly ill, so as to stop in the middle of a sentence and before disposing of all his estate, as in the beginning he said he meant to do, and the paper is thus imperfect, in the broadest sense of the term, and he dies immediately, but after putting the paper in the hands of another person as his will, or locking it up in his desk with the declaration that it is his will as far as it goes, notwithstanding his inability to complete it, we see no reason, why those things should not be deemed equivalent to publication proved by attesting witnesses. The statute does not require a holograph will to be a
 
 perfect
 
 will, in every and the strictest sense of the term. Neither did it mean, that every paper, which might contain any disposition in its nature testamentary, should be deemed a good will, because in accordance with the letter of the act, although it might be imperfect, and so imperfect as, under the circumstances,' to satisfy every reasonable person, that the party deceased intended to make additions to it, and did not intend it to be his will, unless such additions should be made, and, moreover, from the subsequent lapse of time or change in situation, that he had abandoned all purpose of making the additions, and, consequently, of disposing by that instrument. Hence, although an imperfect paper may be
 
 prima facie
 
 within the statute, it cannot be deemed to be conclusively so, unless, under all the circumstances, the jury can be reasonably satisfied, that the paper was not in progress, nor abandonJ ed, but that the party deceased had come to a final conclusion to dispose, as far as the paper goes at all events, and continued in that mind. The ceremonies prescribed-by the act are not conclusive of the
 
 animus disponendi
 
 in such cases; but all other facts and circumstances may be taken into consideration. When a paper is spoken of as an “imperfect” will, it. means, strictly speaking, one which, in point of form, is not all the party intended to make it, as apparent from the face of .the paper. But it is equally true, that the term is frequently and properly — though not so properly as in the other sense — used
 
 *690
 
 to mean, that it is not finished in the formal and complete man-in which persons generally express their wills.- For example, that no executor is appointed, as is usual; that, though tQ j3e prcsnmecj) that every person, who undertakes to make a will, does not intend to die intestate as to any part of his estate, the particular paper leaves out a considerable portion of the party’s property, and makes no provision for many of his children ; that there is no date, nor any formal conclusion to the paper; and that it was never executed ; and the like. Now, it is obvious, that either one of such imperfections or deficiencies argues something against a paper, as a will, as the final disposition of the supposed testator; though they differ greatly in cogency in themselves, and may differ still more according to other circumstances. But that very difference shews, that it is a question of actual intention in each case. Here it might justly have been argued, that from the state of the family and the dispositions in the instrument, it .was fair to infer, that the great object was to provide, perhaps out of property gained by the marriage, for a second wife and a single child by her, and, therefore, that the party deceased intended the instrument to operate, as far as it goes at all events, whether he added any thing or executed the paper, or not. Indeed, it was said in the argument, that it was an error in the court not to put that point directly to the jury, as they might have found such a purpose-; whereas, from the instruction, as given, the jury might have understood, that they must find against the will, if the party intended for any reason to act further on the paper, as by adding other dispositions or by execution. But the counsel did not ask that view to be taken on the trial, and a judge is not to be deemed as not doing his duty to a party by omitting an argument for him, which neither he nor his counsel suggested. It is sufficient that the proposition, as stated to the jury, be not erroneous in itself, or in its application to the case; and if more precise instructions are wanted, they must be prayed. Here the instructions giv-en were in themselves correct, and relevant to the facts in evidence. For, certainly, an unexecuted paper is subject to
 
 *691
 
 some presumption against it;
 
 Montefiore
 
 v. Montefiore, 2 Ad. 354; though that presumption may be rebutted by accounting for the want of execution, as sudden death or the like. Yet such a paper, which takes no notice of several parts of the party’s property and of several of his children, appoints no executor, but terminates abruptly, and was not executed, though the party deceased lived nine years after it was written and had the paper under his control, has pretensions, only the most questionable, to be or to have ever been regarded by that party as his will. And when to that are added his express and frequent declarations, that he had made no will, the conclusion might well be drawn, that the party
 
 never
 
 published or intended the instrument, in its actual state, to be his will to any purpose.
 
 Scott
 
 v. Rhodes, Phill. 12.
 
 Montefiore
 
 v.
 
 Montefiore,
 
 2 Add. 354. At all events, that was a question of fact, and was fairly left to the jury.
 

 It was further contended, that the instructions were erroneous in saying that in order to make the paper a will, it was necessary that the party deceased should have
 
 “
 
 placed” it among his valuable effects with an intention, that it should be his will; whereas, the act is, that if it be “found” among those effects after the party’s death,, that shall be sufficient. But that is a mere verbal criticism; ..for the act plainly supposes, that it was “ found” among the party's valuable effects after his death, because he “ placed” it there
 
 as his will
 
 before his death. . The instructions, therefore, only expressed what the statute implied.
 

 Per Curiam, Judgment affirmed.