## IN RE WILL OF HATTIE KIRBY GILKEY.

### (Filed 28 February, 1962.)

**1. Wills § 4—**

It is not required that the signature of a holographic will be witnessed, and testimony of three credible witnesses that the paper writing propounded was written and subscribed entirely in the handwriting of the author meets the requirements of G.S. 31-3.4.

**2. Same—**

The requirement that a holographic will be found after the death of testator among his valuable papers or papers considered by him to be valuable, is solely for the purpose of establishing *animus testandi*, and where testator places and leaves a holographic will among his valuable papers the fact that after the testator becomes incapacitated another

finds and sees the papers and removes them to a place of safety does not affect the statutory requirement of G.S. 31-3.4(a) (3).

**3. Same—**

Testimony that some three weeks prior to testatrix's death the paper writing probated as testatrix's holographic will was found in a metal box, containing other valuable papers, in the closet of testatrix's bedroom, that propounder moved the valuable papers to a lock box rented by him from a bank, and that the paper writing was found with testatrix's other papers in the lock box when inventoried after her death, together with evidence that at the time propounder found the papers testatrix was confined to a hospital incapacitated from her fatal illness, *is held* sufficient to be submitted to the jury on the question whether the paper writing was found among testatrix's valuable papers.

**4. Same—**

Where the person appointed attorney in fact finds the paper writing propounded by him among testatrix's valuable papers while testatrix was confined to a hospital incapacitated by her last illness, it is not error for the court to fail to charge with respect to the duty imposed upon propounder by the power of attorney to take possession and custody of the will and all other valuable papers belonging to testatrix.

Winborne, C.J., not sitting.

Appeal by caveator from *Campbell, J.,* October 1961 Civil Term of McDowell.

Hattie K. Gilkey, a resident of McDowell County, died 6 December 1960. She left surviving a son, John M. Gilkey, a daughter, Virginia G. Hawkins, and a granddaughter, Harriet J. Frazelle, daughter of Mrs. Hawkins.

On 12 December 1960 John M. Gilkey (hereafter referred to as propounder) offered for probate as his mother's will a paper writing consisting of two sheets. The instrument was dated 7 June 1958. The opening sentence is: "This is my Last Will." It gave all of testator's property to propounder, but directed him to pay $5,000 to Harriet Frazelle. It named propounder as executor. The paper was probated in common form as the holographic will of Mrs. Gilkey.

Mrs. Hawkins filed a caveat, alleging: (1) There were no witnesses to the writing; (2) it was not found after the death of Mrs. Gilkey among her valuable papers or effects; (3) Mrs. Gilkey did not in June 1958 possess mental capacity to make a will; and (4) she was subject to improper and undue influence.

Propounder denied the allegations of undue influence and lack of mental capacity. He alleged the paper was in the handwriting of his mother, subscribed by her, and found among her valuable papers after her death.

The court without objection submitted and the jury answered issues as follows:

"1. Was the paper writing shown by Propounder's Exhibit #1 found among the valuable papers of Hattie Kirby Gilkey?

"ANSWER: Yes.

"2. Was the paper writing shown by Propounder's Exhibit #1 entirely in the handwriting of Hattie Kirby Gilkey?

"ANSWER: Yes.

"3. Was the paper writing shown by Propounder's Exhibit #1 found after the death of Hattie Kirby Gilkey?

"ANSWER: Yes.

"4. Is the paper writing shown by Propounder's Exhibit #1 the Last Will and Testament of Hattie Kirby Gilkey?

"ANSWER: Yes."

The court thereupon adjudged the paper writing to be the last will and testament of Mrs. Gilkey. Caveator excepted and appealed.

*E. P. Dameron for propounder appellee.*
*Hamrick & Hamrick by J. Nat Hamrick, and Joseph B. Cheshire, Jr., for caveator appellant.*

Rodman, J.  Caveator offered no evidence to support her allegations of lack of mental capacity or undue influence.

Mrs. Gilkey's signature was not witnessed. None was necessary if the requirements for a holographic will were established. G.S. 31-3.4(b).

The Legislature which convened in Hillsboro in April 1784 declared no will should be valid unless subscribed in testator's presence by at least two witnesses. Sec. 11, c. 204, Potter's Laws of North Carolina (1821). That statute is now in substance G.S. 31-3.3. The Legislature next convened in New Bern on 22 October 1784. It then amended the Act passed at the previous session. Sec. 5 of the amendatory Act reads: "And whereas the attestation of witnesses to wills and testaments required by the before mentioned act, (a) is intended to prevent frauds and impositions by the will of persons hastily drawn up in their last sickness, or from their want of sufficient knowledge for that purpose, and it may be proper to make exceptions from that rule in particular cases: *Be it therefore enacted,* That when any last will shall be found among the valuable papers or effects of any deceased person, or shall have been lodged in the hands of any person for safekeeping, and the same shall be in the hand-writing of such deceased person and his name subscribed thereto, or inserted in some part of such will, and if such hand-writing is generally known by the acquaintances of such

deceased person, and it shall be proved by at least three credible witnesses that verily believe such will and every part thereof is in the hand-writing of the person whose will it appears to be; then and in that case such will shall be sufficient in law to give and convey a sufficient estate in lands, tenements and hereditaments, any thing in the before recited act to the contrary notwithstanding." C. 225, Potter's Laws of North Carolina (1821).

The conditions prescribed by the Act of 1784 for a valid holographic will have remained substantially the same to the present time. G.S. 31-3.4.

Propounder, to show the instrument offered for probate complied with the statutory requirements for a valid holographic will, put on numerous witnesses, among others, the brother and two sisters of deceased, who testified that the instrument including the name Hattie K. Gilkey subscribed thereto was entirely in the handwriting of Mrs. Gilkey. No witness testified to the contrary. This testimony, accepted by the jury as true, sufficed to show compliance with subsecs. 1 and 2 of G.S. 31-3.4(a).

The third subsection of this statute requires the paper writing to be "(f)ound after the testator's death among his valuable papers or affects, or in a safe deposit box . . . where it was deposited by him or under his authority, or in the possession or custody of some person with whom . . . it was deposited by him or under his authority for safe-keeping." To show compliance with this statutory requirement, propounder and his witnesses testified to these facts:

Mrs. Gilkey was 69 when she died. In March 1960 she went to Asheville for an operation for cancer. On 19 October she entered the hospital in Marion. She was in much pain. The cancer had apparently returned. She remained in the hospital one week. While Mrs. Gilkey was in the hospital in Marion propounder and caveator agreed it would be wise for Mrs. Gilkey to designate someone to handle her affairs. Mrs. Gilkey concurred. An attorney in Marion on 28 October drafted a power of attorney authorizing propounder to take possession of all of Mrs. Gilkey's properties, collect any sums owing her, and pay any debts owing by her with authority to sell or mortgage any of her properties. This instrument authorizing propounder to act for his mother was executed by Mrs. Gilkey and acknowledged by her before the Assistant Clerk of the Superior Court of McDowell County on 31 October.

Because of the spread of the cancer Mrs. Gilkey was readmitted to the Marion hospital on 3 November. She was critically ill. She remained in the hospital until her death on 6 December.

Mrs. Gilkey owned her home. She lived alone but rented a room to

a lodger who worked at night and slept during the day. About three weeks before Mrs. Gilkey's death and when it was apparent to propounder that his mother could not recover, he went to the home to look for some of her papers. On the floor in a closet in her bedroom he found a metal box which contained canceled checks, bank statements, and a large brown envelope. In this envelope propounder found: A policy of insurance issued to Mrs. Gilkey by Hospital Care Association, stock certificates issued to Mrs. Gilkey by American Telephone & Telegraph Co., First National Bank of North Carolina, and National Security Corporation, a watch, two wedding rings, and other jewelry, a deed for lots on Crescent and Fleming Avenues (land referred to in the will), and a sealed white envelope on which was written in Mrs. Gilkey's handwriting "My Will — To — John Millard Gilkey — Marion, N. C."

Propounder took the brown envelope with its contents to First National Bank of Marion and there lodged it in a safety deposit box which he had rented in July. He and his wife had access to this deposit box. He opened this deposit box twice prior to an inventory of its contents on 12 December 1960: first, on the day prior to Mrs. Gilkey's death to get one of the American Telephone & Telegraph stock certificates to use as collateral for a loan to be made by the bank to his mother; second, on the day of his mother's death to get some instructions which she had written concerning her funeral.

On 12 December the contents of the box were inventoried by the Clerk of the Superior Court of McDowell County, an official of the bank, propounder, and his attorney. The white envelope which contained the will was then sealed. The contents of the brown envelope were the same as when propounder first found it except for the certificate of telephone company stock which he had used as collateral for a loan from the bank, and in the place of that was the bank's receipt for the certificate. The contents at that time were established by the testimony of the clerk of the court and bank officials.

Caveator offered no evidence tending to contradict the evidence offered by propounder with respect to the finding of the brown envelope or its contents in November when found by propounder or the contents at the time of Mrs. Gilkey's death.

Caveator insists the testimony offered by propounder, summarized above, if true, is insufficient to meet the requirements of G.S. 31-3.4(a) (3). She challenges the sufficiency of this evidence by motion to nonsuit and by exceptions to the charge. Her position is that the statute requires an original discovery subsequent to death. Hence a paper purporting to be a will could not be "found" after the death of the

author by a person who, prior to the author's death, knew of and had seen the will with other valuable papers of the author.

To give effect to caveator's interpretation of the statute could and would doubtless in many instances defeat legislative intent. The requirement that the writing be found after death among testatrix's valuable papers was to show the author's evaluation of the document, important because lodged with important documents, to become effective upon death because left there by the author, thereby establishing the necessary *animus testandi.*

If the document had been placed among the author's valuable papers without her knowledge and consent, it would of course have no validity as a will even though found among the papers after the author's death. As said by *Connor, J.,* in *In re Will of Groce,* 196 N.C. 373, 145 S.E. 689: "There is no requirement as to the place where the paper-writing, and the valuable papers and effects, shall be found. The place where the papers and effects of deceased, including the paper-writing offered for probate, are found, after his death, is material, only upon the question as to whether or not such papers and effects are, and were considered by the deceased as valuable. The purpose of the statute is effectuated when the paper-writing propounded as a will is identified as the will of the deceased, by the fact that it is in his handwriting, and when his intent that it shall take effect as his will is shown by the fact that he kept it among papers and effects which he regarded as valuable, and which, in fact, were valuable."

*Judge Connor's* words epitomize previous decisions of this Court interpreting the statute. *In re Westfeldt,* 188 N.C. 702, 125 S.E. 531; *In re Jenkins,* 157 N.C. 429, 72 S.E. 1072, 37 L.R.A. (N.S.) 842; *In re Sheppard's Will,* 128 N.C. 54; *Alston v. Davis,* 118 N.C. 202; *Winstead v. Bowman,* 68 N.C. 170; *Hughes v. Smith,* 64 N.C. 493; *Hill v. Bell,* 61 N.C. 122; *Simms v. Simms,* 27 N.C. 684.

Tennessee adopted our statute prescribing the conditions for a valid holographic will. That portion of its statute requiring a deposit among testator's valuable papers was repealed in 1941. Seemingly North Carolina and Tennessee are the only states which have required a deposit among valuable papers or with someone for safekeeping as a requisite of a holographic will. 2 N.C. Law Rev. 107.

The interpretations given the statute by Tennessee courts are in harmony with the conclusions reached by this' Court. *Pulley v. Cartwright,* 137 S.W. 2d 336, bears remarkable similarity to *In re Westfeldt, supra,* and this case. There a Mrs. Allen kept the document propounded in her purse which she kept with her. The night before Mrs. Allen's death a nurse took the purse and put it in a trunk in another room. It was there found after Mrs. Allen's death. The court

said: "The fact that the nurse moved the pocketbook after Mrs. Allen was no longer able to watch over her affairs, a few hours before her death, and put it in the trunk in the next room, without her knowledge or consent, cannot alter the situation and require the beneficiaries under the will to show that the trunk was where Mrs. Allen kept her valuable papers." See also *Hooper et al. v. McQuary,* 45 Tenn. 129; *Tate v. Tate,* 30 Tenn. 465.

The court properly imposed on propounder not only the burden of showing the papers were found among Mrs. Gilkey's valuable papers, but the burden of showing that she placed them there with testamentary intent.

Neither *Little v. Lockman,* 49 N.C. 494, nor *Adams v. Clark,* 53 N.C. 56, relied upon by caveator, support her contention. In *Little v. Lockman,* the determinative question was the character of the papers with which the will was placed. The rigidity of the rule there announced was criticized in *Winstead v. Bowman, supra,* and *In re Sheppard's Will, supra.* In *Adams v. Clark,* the will was exhibited by decedent some eight months prior to his death and then placed among his valuable papers, but there was no evidence to show where it was found after death, and because of the failure to explain where found after death, it was held propounder had failed to carry the burden.

Caveator also assigns as error the failure of the court to charge the jury with respect to the duty imposed on propounder by the power of attorney to take possession and custody of the will and other valuable papers belonging to his mother. The failure to charge that it was the duty of the attorney in fact to preserve his mother's valuable papers and effects required propounder to carry a heavier burden. Caveator cannot complain of this.

No error.

WINBORNE C.J., not sitting.