IN THE MATTER OF THE WILL OF LAWRENCE ADOLPH MUCCI, DECEASED

No. 12

(Filed 14 April 1975)

1. Wills § 1— probate — necessity for testamentary intent

Before any instrument can be probated as a testamentary disposition there must be evidence that it was written *animo testandi*, or with testamentary intent; an intent to make some future testamentary disposition is not sufficient.

2. Wills § 4— holographic instrument — testamentary intent

The necessary *animo testandi* with regard to a holographic instrument must appear not only from the instrument itself and the circumstances under which it was made but also from the fact that the instrument was found among the deceased's valuable papers after his death or in the possession of some person with whom the deceased had deposited it for safekeeping.

---

In re Will of Mucci

---

3. **Wills § 4— holographic instrument — testamentary intent — jury question**

Where a holographic instrument on its face is equivocal on the question of whether it was written with testamentary intent and there is evidence that the instrument was found among the valuable papers of the deceased, the *animo testandi* issue is for the jury and parol evidence relevant to the issue may be properly admitted.

4. **Wills § 4— holographic instrument — testamentary intent — among valuable papers — insufficient evidence — question of law**

If there is nothing on the face of a holographic instrument from which a testamentary intent may be inferred or evidence is lacking that the instrument was found among deceased's valuable papers or placed by him in the possession of some other person for safekeeping, the instrument may not, as a matter of law, be admitted to probate.

5. **Wills § 6— letter sent to attorney — no codicil**

The evidence was insufficient to support a jury finding that a handwritten letter mailed by testator to his executor and attorney who prepared his will, in which testator stated that he wished his third wife to have use of the residence until her death, was intended by testator to be a codicil and was placed by testator with his executor-attorney for safekeeping as a codicil, where it tended to show that testator simply mailed the letter to the executor-attorney without any instructions with regard to it as a document.

6. **Wills § 24— caveat — necessity for jury verdict**

Once a caveat is filed and the proceeding to probate is transferred to superior court for trial, there can be no probate except by a jury's verdict; the trial court may not, at least where there are factual issues, resolve those issues even by consent and adjudge that the disposition in question is testamentary and entitled to probate as a matter of law.

7. **Wills § 24— caveat proceeding — directed verdict**

Where the propounder fails to offer evidence from which a jury might find that there has been a testamentary disposition, it is proper for the trial court under G.S. 1A-1, Rule 50, to enter a directed verdict in favor of the caveators and adjudge, as a matter of law, that there can be no probate.

ON *certiorari* to review the decision of the Court of Appeals, reported in 23 N.C. App. 428, 209 S.E. 2d 332 (1974), reversing the judgment of *Winner, J.*, entered at the March 4, 1974 Session of BUNCOMBE Superior Court.

---

In re Will of Mucci

---

This is a caveat proceeding attacking the validity of a purported holographic codicil to an attested will of the deceased, Lawrence A. Mucci. Only the propounder offered evidence. Judge Winner entered this judgment:

"Upon close of the Propounder's evidence and upon Motion of the Caveators, pursuant to Rule 1 and Rule 50, Section 1A-1 of the General Statutes of North Carolina, made in open Court, the Court hereby enters a directed verdict in favor of the Caveators and adjudges the letter dated September 25, 1971, offered for probate by the Propounders, not to be a codicil to the Last Will and Testament of the decedent as a matter of law."

The uncontradicted evidence was that Lawrence A. Mucci, before his death in October, 1972, was a physician specializing in radiology. George H. Johnson, Jr., the propounder, Mucci's attorney and neighbor, prepared an attested will for the deceased which was duly executed on June 25, 1971, at Johnson's residence. By this will, Mucci devised his entire estate after payment of claims to his two minor sons, Richard Allyn Mucci and Jeffrey Alan Mucci who, acting through their guardian, Mary M. Mucci, deceased's second wife, are the caveators. His two adult sons were named contingent beneficiaries. George H. Johnson, Jr., was named executor. On September 11, 1971, Mucci married Mary Elizabeth, his third wife, referred to by witnesses who knew her as "Betty," who has aligned herself with the propounder. After Mucci's death, Johnson presented to the Clerk of Buncombe County two paper writings purporting to be the last will and testament of the deceased. The first was the attested will, the validity of which is not contested. The second was a letter reproduced in the record as follows:

"LAWRENCE A. MUCCI, M.D.
4 SPRINGSIDE PARK
ASHEVILLE, N. C. 28803

9-25-71

Atty. George H. Johnson
1 Springside Park
Asheville, N. C. 28803

Dear George:

Please note that on my death I want my present wife Mary Elizabeth (Illegible) Mucci to have the right of resid-

ing at 4 Springside Park until her death. Also note that the expense of upkeep and care of said residence will rest with the estate if her share of my estate is insufficient for this purpose.

Sincerely Yours
LAWRENCE A. MUCCI"

Other than the letterhead, which was stamped on the paper writing, the instrument is entirely in the handwriting of Dr. Mucci. The letter is addressed to the residence of Johnson and it was delivered there by mail. Johnson took the letter to his office and placed it in a file he maintained on Mucci which contained the attested will.

Over propounder's objection Johnson testified on cross-examination that before receiving the letter he had had no conversation with Mucci relative to its contents. After receiving the letter Johnson suggested to Mucci that a formal codicil should be prepared and witnessed to conform to the original will. Mucci's response was, "George, go ahead and draw it up." Two or three days later Johnson prepared a formal codicil, the substance of which does not appear in the record. When advised that the codicil had been prepared Mucci told Johnson, "This is what I want; I have to get witnesses for it; I'll be in touch with you later." In late October, 1971, Johnson advised Mucci that he was "wearing the codicil out carrying it back and forth from [his] office to [his] home" and suggested that Mucci get his witnesses and sign the codicil. Mucci replied, "I'm not quite ready to do that yet. I'll let you know." There was no further communication between Johnson and Mucci about the formal codicil. It was never executed.

At his death Mucci was living with his third wife, Betty, and his two minor sons.

Propounder offered other evidence through witnesses who knew Mucci and Betty to the effect that a few days before his death he stated that he had everything taken care of with regard to his two wives and his kids and that "Betty's got the house, Mary's got the money"; that at the time of the execution of the attested will in June, 1971, he stated that he was going to draw a new will and take care of Betty; and that at some unspecified time he remarked that Betty would have a home for "the rest of her days, that she would have two hundred dollars a month and twenty thousand dollars." Mucci's declarations a few

days before his death and more than a year after he had written the letter were made in response to considerable prodding by the witness to whom they were made and who was also a mutual friend of Mucci and Betty. This witness insisted on knowing whether Betty had been provided for. She said to Mucci, "Have you taken care of your two wives and your kids. You're a brilliant man, but you can be so stupid." Mucci replied, "Would you quit bugging me?" After this exchange he made the declarations upon which propounder relies.

Betty Mucci testified that she had never seen the letter in question until it was presented in the courtroom.

*G. Edison Hill, for the propounder, George H. Johnson, Jr.*

*Morris, Golding, Blue and Phillips, by James F. Blue III, for Mary E. Mucci, party aligned with the propounder.*

*Richard B. Ford, for caveators.*

EXUM, Justice.

We agree with the conclusion in Judge Hedrick's opinion, 23 N.C. App. 428, 209 S.E. 2d 332 (1974), that there is no evidence in this record from which a jury could find that the letter in question was a codicil to Mucci's attested will. The Court of Appeals erred, however, in reversing the entry of a directed verdict in favor of the caveators and remanding this case for further proceedings.

[1] Before any instrument can be probated as a testamentary disposition there must be evidence that it was written *animo testandi*, or with testamentary intent. *In re Perry*, 193 N.C. 397, 137 S.E. 145 (1927) ; *In re Johnson*, 181 N.C. 303, 106 S.E. 841 (1921). The maker must intend at the time of making that the paper itself operate as a will, or codicil; an intent to make some future testamentary disposition is not sufficient. *In re Johnson, supra; In re Bennett*, 180 N.C. 5, 103 S.E. 917 (1920).

[2] With regard, moreover, to holographic instruments, the necessary *animo testandi* must appear not only from the instrument itself and the circumstances under which it was made, *Spencer v. Spencer*, 163 N.C. 83, 79 S.E. 291 (1913), but also from the fact that the instrument was found among the deceased's valuable papers after his death or in the possession of some person with whom the deceased had deposited it for safe-

---

### In re Will of Mucci

---

keeping. *In re Will of Gilkey,* 256 N.C. 415, 124 S.E. 2d 155 (1962) ; *In re Bennett, supra.* For complete statutory requirements see G.S. 31-3.4.

[3, 4] Where a holographic instrument on its face is equivocal on the question of whether it was written with testamentary intent and there is evidence that the instrument was found among the valuable papers of the deceased the *animo testandi* issue is for the jury and parol evidence relevant to the issue may be properly admitted. *In re Westfeldt,* 188 N.C. 702, 125 S.E. 531 (1924) ; *In re Southerland,* 188 N.C. 325, 124 S.E. 632 (1924) ; *In re Harrison,* 183 N.C. 457, 111 S.E. 867 (1922). If there is nothing on the face of the holograph from which a testamentary intent may be inferred or evidence is lacking that the instrument was found among the deceased's valuable papers or placed by him in the possession of some other person for safekeeping, the instrument may not, as a matter of law, be admitted to probate. *In re Perry, supra; In re Johnson, supra; In re Bennett, supra; Spencer v. Spencer, supra.*

[5] While we do not decide this question, it is arguable that Mucci's letter, standing alone, contains language from which a testamentary intent may be inferred. There is, however, no evidence that the letter was found among his valuable papers or placed by him in the possession of someone for safekeeping. All the evidence is to the effect that he simply mailed the letter to Johnson, his executor and attorney, who three months before had prepared a formal, attested will which Mucci had duly executed. There is no reference in the letter to the formal will. There are no special instructions to Johnson with regard to the handling of the letter itself. There is nothing to indicate that Mucci intended for Johnson to keep the letter, preserve it, or treat it differently than he would any other letter. That Mucci simply mailed the letter to his attorney and executor is not enough for a jury to infer that he had placed it with him for safekeeping as a codicil. That Mucci simply mailed the letter without any special instructions with regard to it as a document tends to show that he thought of it, not as a codicil to his will, but simply an instruction to his attorney to prepare such a codicil.

*In re Bennett, supra,* was a caveat proceeding where a letter to the deceased's friend received by the friend in the mail was offered for probate. The last paragraph in the letter read:

"Iff aney thing happens to me I want you to have ever thing I got in the world and I will have it fixed iff I can have the chance for you have done moore for me than aney one on earth,

from one who love you,
G. M. Bennett."

This Court held that the letter could not, as a matter of law, be probated as a will. We said:

"This letter bears no evidence on its face, nor is there any proof otherwise that Bennett intended that it should be deposited with the propounder, or any one else, for safe keeping. There is no request that he keep or preserve the letter, or that he do anything more with it than he would with any ordinary or casual letter received from him, or any other person.

\*   \*   \*   \*

"There is also nothing in the language used which shows an intention to deposit the paper 'with some person as his will,' but is a casual letter, written and mailed only as is a letter in any correspondence, and not attended by the solemnity which is, and should be, required in executing so important an instrument as a will." 180 N.C. at 10, 11, 103 S.E. at 919, 920.

*Alston v. Davis,* 118 N.C. 202, 24 S.E. 15 (1896) held that a letter mailed to the deceased's sister could be probated as a will saying that the mailing of the letter itself was sufficient to draw an inference that the deceased gave it to her sister for safekeeping and that it was not necessary that any express language indicating such an intent be used in the letter. There was, however, a forceful dissent by Furches, J., and the holding of the case was overruled in *Spencer v. Spencer, supra. In re Bennett,* 180 N.C. at 12, 103 S.E. at 920; *McEwan v. Brown,* 176 N.C. 249, 252, 97 S.E. 20, 21 (1918). In *Spencer,* an action to recover a portion of insurance proceeds, plaintiff relied on a letter the deceased, his brother, had written to him which plaintiff contended was a codicil to his broth-

er's previously executed will. The letter, 163 N.C. at 86, 79 S.E. at 292, read:

"Brother Alex:

I am sorry you had to go under. I hope you will save something out of it. If I die I want you to have your part of the five thousand insurance I took out for Spencer Brothers. I have written Brother George to see that you get it.

We will sail for southern Italy to-morrow, and will go up through the different countries to London, and then home. Will be gone ten weeks.

Give my love to Mame and Bettie.

Good-bye,        Your Brother,
                 Jones."

This Court affirmed a judgment of nonsuit entered in the Superior Court and held, on several grounds, that the letter relied on could not as a matter of law, operate as a codicil. We said:

"It is essential that it should appear from the character of the instrument, and the circumstances under which it is made, that the testator intended it should operate as his will, or as a codicil to it.

"In the case at bar the testator had made his will . . . . This so-called codicil is a letter written to his brother immediately after he had executed his will, and makes no reference to it. It is scarcely probably that the testator regarded or intended such a letter to be in any sense a part of his will." 163 N.C. at 88, 79 S.E. at 293.

In cases relied on by propounder the letters which were admitted to probate were, in each instance, found among the valuable papers of the deceased. *Rountree v. Rountree,* 213 N.C. 252, 195 S.E. 784 (1938); *In re Will of Thompson,* 196 N.C. 271, 145 S.E. 393 (1928); *In re Westfeldt, supra; Wise v. Short,* 181 N.C. 320, 107 S.E. 134 (1921); *In re Will of Ledford,* 176 N.C. 610, 97 S.E. 482 (1918). In *Rountree* this Court pointed out, "He undoubtedly intended the letter as his will. He *did not mail it,* but placed it in his safe among his valuable papers." 213 N.C. at 254, 195 S.E. at 785. (Emphasis supplied.)

The declarations made at sundry times by Mucci relied on in some instances by the propounder and in others by the caveators make no difference in result. These were to the effect that after Mucci wrote the letter, he first agreed to execute a formal codicil and then failed to do so, that he intended at some time to make a testamentary gift in favor of Betty, and that he said a few days before his death under considerable prodding that Betty had been provided for. The issue is not whether he intended to provide for Betty, or later changed his mind, or still later thought that he had somehow provided for her. The issue is whether Mucci at the time he wrote it intended for the letter itself to be a testamentary instrument and placed it *as such an instrument* in the possession of Johnson for safekeeping. None of his declarations are sufficiently probative to warrant an affirmative answer.

Since there is insufficient evidence upon which to probate the letter, was it proper for the trial court to enter a directed verdict in favor of the caveators and adjudge without submitting the question to a jury that the letter was not a codicil to the will of the deceased? Judge Hedrick was of the opinion that this was error and ordered that the case be remanded to the Superior Court so that a jury could be peremptorily instructed on the issue. He relied on cases as does the propounder here which state the rule that inasmuch as a caveat proceeding is *in rem,* motions for nonsuit or requests for a directed verdict are not proper. *In re Will of Redding,* 216 N.C. 497, 5 S.E. 2d 544 (1939); *In re Westfeldt, supra; In re Hinton,* 180 N.C. 206, 104 S.E. 341 (1920); *In re Will of Hodgin,* 10 N.C. App. 492, 179 S.E. 2d 126 (1971). In all of these cases, however, the propounders had satisfied the burden initially placed upon them to come forward with evidence tending to show a testamentary disposition. The real issues in *Redding* were whether the testator had testamentary capacity and whether the paper writing was procured by undue influence. In *Westfeldt* the issue was whether there was the requisite testamentary intent, but the court found there was ample evidence to go to the jury on that question. In *Hinton* the issue was whether the testator had testamentary capacity, and in *Hodgin,* whether certain marks made on an attested will were put there by the testator with intent to revoke the will.

In the case of *In re Will of Roediger,* 209 N.C. 470, 184 S.E. 74 (1936), the question was whether the testator had by obliterating certain portions of a previously attested will in-

tended to revoke it. Most of the facts were stipulated by the propounder and the caveators who agreed to waive a jury and allow the trial judge to hear the evidence and find such additional facts as would be necessary to a judgment. The trial judge did so and adjudged that the interlineations and erasures should be given no effect and the writing probated as if they had not been made. This Court remanded the case on the ground that it would have to be submitted to a jury, saying:

> "When a caveat to the probate in common form of a paper writing propounded as the last will and testament of a deceased person has been filed as provided by C.S., 4158, and the proceeding which was begun before the clerk of the Superior Court having jurisdiction, has been transferred to the Superior Court for trial of the issue raised by the caveat at term time, as provided by C.S., 4159, the issue must be tried by a jury and not by the judge. A trial by jury cannot be waived by the propounder and the caveator. Nor can they submit to the court an agreed statement of facts, or consent that the judge may hear the evidence and find the facts determinative of the issue. The propounder and the caveator are not parties to the proceeding in the sense that they can by consent relieve the judge of his duty to submit the issue involved in the proceeding to a jury.

> "In the instant case, it was error for the judge to render judgment on the facts agreed upon by the propounder and the caveator, and supplemented by the facts found by him, with their consent. The proceeding was *in rem,* and could not be controlled by the propounder and the caveator, even with the consent and approval of the judge. In that respect it is distinguishable from a civil action." 209 N.C. at 476, 184 S.E. at 77-78.

[6] These cases, *Redding, Westfeldt, Hinton, Hodgin,* and *Roediger,* taken together, stand for the proposition that once a caveat is filed and the proceeding to probate is transferred to superior court for trial there can be no probate except by a jury's verdict. The trial court may not, at least where there are any factual issues, resolve those issues even by consent and adjudge that the disposition in question is testamentary and entitled to probate as a matter of law.

There are cases in which the writing under consideration was held as a matter of law to be entitled to probate without the intervention of the jury. *Rountree v. Rountree, supra; In re Will of Thompson, supra; Wise v. Short, supra; In re Will of Ledford, supra.* The first three of these cases were not strictly caveat proceedings. *Rountree* was a proceeding under the Declaratory Judgment Act to determine the character of a writing which had already been probated in common form. *Thompson* was an appeal from the clerk who had refused to admit the writing to probate. There was no caveator and the matter was heard in chambers in superior court. *Wise v. Short* was a civil action to enforce a contract for the sale of land where the validity of defendant's title depended upon whether the writing in question was a will. *Ledford* was a caveat proceeding. All of the facts, however, were judicially stipulated and the parties agreed that the question was one of law for the court. The procedure used in *Ledford* seems to conflict with dictum quoted above from *In re Will of Roediger. Ledford* is distinguishable, however, in that there the trial court did not make any factual findings.

[7] Where, as here, propounder fails to come forward with evidence from which a jury might find that there has been a testamentary disposition it is proper for the trial court under Rule 50 of the Rules of Civil Procedure to enter a directed verdict in favor of the caveators and adjudge, as a matter of law, that there can be no probate. *In re Johnson, supra.* In *Johnson*, a proceeding in solemn form for the probate of a paperwriting, the trial court after hearing evidence for the propounder adjudged without a jury's intervention that the paper writing was not a will and refused to permit it to be probated. This Court affirmed, saying:

> "The refusal to submit an issue as to the intention of the deceased was not erroneous, as this intent must be gathered from the letter and the surrounding circumstances, and a finding of the jury contrary to the language used in the letter could not be sustained." 181 N.C. at 306, 106 S.E. at 842.

In two cases, where there was no evidence of testamentary intent this Court, reviewing jury verdicts in favor of propounders, remanded the cases for peremptory instructions in favor of caveators. *In re Perry, supra; In re Bennett, supra. Perry* and *Bennett,* however, do not hold that in such cases the trial court

may not enter a directed verdict in favor of the caveator. We said in *Bennett:*

> "The learned judge who presided at the trial . . . should have directed the jury to answer the issue in favor of the caveators, or, in other words, 'No,' as there was no evidence, in a legal sense, that the paper-writing, which was propounded . . . was the will of George M. Bennett . . . . " 180 N.C. at 8, 103 S.E. at 918.

Rather than direct or peremptorily instruct the jury to do what is essentially a mechanical act the better practice is for the trial court to enter a directed verdict pursuant to Rule 50 of the Rules of Civil Procedure.

The judgment of the trial court is correct. The decision of the Court of Appeals is

Reversed.