IN THE MATTER OF THE WILL OF WILLIAM SMITH LANYON LAMPARTER, DECEASED

No. COA96-462

(Filed 1 July 1997)

### 1. Wills § 28 (NCI4th)— holographic—testamentary intent

The trial court did not err in a caveat to a will by denying respondents' motion for a directed verdict at the close of the caveators' evidence where the surrounding circumstances were that the holographic writing was not neatly and meticulously set forth, as was decedent's habit, the writing was not signed and dated, it did not dispose of decedent's entire estate, it contained inconsistent bequests, and decedent never showed the document to any witness indicating that it was his completed last will and testament. The surrounding circumstances at least rendered the instrument on its face equivocal as to testamentary intent but did not necessarily negate the express testamentary language in the holographic writing. There was some evidence that the holographic writing was found among decedent's valuable papers and the issue of testamentary intent was therefore for the jury.

**Am Jur 2d, Wills §§ 702-723.**

**Requirement that holographic will, or its material provisions, be entirely in testator's handwriting as affected by appearance of some printed or written matter not in testator's handwriting. 37 ALR4th 528.**

### 2. Wills § 28 (NCI4th)— holographic—testamentary intent

There was no error in a caveat to a will in the denial of the caveators' motion for a directed verdict where caveators contended that the holographic writing met all of the statutory elements for a valid holographic will and bore testamentary intent on its face. The evidence surrounding the making of the writing renders it equivocal on the issue of testamentary intent, including evidence that the writing was not neatly and meticulously set forth, as was decedent's habit, that it was not signed and dated,

did not dispose of decedent's entire estate, contained inconsistent bequests, and that decedent never showed the document to any witness indicating that it was his completed last will and testament. The question was for the jury.

**Am Jur 2d, Wills §§ 706-720.**

3. **Evidence and Witnesses §§ 2602, 2716 (NCI4th)— holographic will—testamentary intent—Dead Man's Statute**

The trial court did not err in a caveat to a will by allowing the caveators to testify about conversations they had with decedent regarding his holographic will. An interested person is disqualified by the Dead Man's Statute from testifying in his own behalf or interest against the executor, administrator or survivor of a deceased person concerning any oral communication between the witness and the deceased; however, N.C.G.S. § 31-10(b) provides that a beneficiary under a holographic will may testify as to competent, relevant, and material facts tending to establish the will as valid. Testimony as to conversations witnesses had with decedent about specific bequests he planned to make, coupled with testimony that decedent told a witness that he had finished his new will, is competent and probative on the issue of decedent's intent that the holographic will operate as his last will and testament. N.C.G.S. § 8C-1, Rule 601(c).

**Am Jur 2d, Wills § 711.**

**Revocation of witnessed will by holographic will or codicil, where statute requires revocation by instrument of equal formality as will. 49 ALR3d 1223.**

Judge WYNN dissenting.

Appeal by respondents from orders entered 15 December 1995 by Judge Jesse B. Caldwell III in Catawba County Superior Court. Heard in the Court of Appeals 13 January 1997.

Decedent, William Smith Lanyon Lamparter, was born on 1 July 1926. He graduated from Rutgers Preparatory School (hereinafter Rutgers) in New Jersey in 1943, and in 1947 he graduated from Duke University. Later he received a master's degree from Duke. In 1968 he moved to Hickory, North Carolina and worked at Century Furniture Company until he retired on 1 September 1989, at which time he was a vice president of the company.

## IN RE LAMPARTER

[126 N.C. App. 593 (1997)]

Decedent never married and had no children, and his mother lived with him in Hickory until her death in 1981. He thereafter lived alone for most of the time until his death on 21 January 1992. At the time of his death, his estate was valued at approximately one million dollars.

On 10 March 1980 decedent executed an attested will, under which he provided for the support, maintenance and comfort of his mother during her lifetime. With the residue he made several specific bequests to friends, relatives, and Duke University, and he established "The William S. Lamparter Endowment Fund" for the Duke University Library and "The William S. Lamparter Teaching Chair in English" at Rutgers. His cousin, Nadine Lanyon Smith Rogel, was named one of three co-executors. Decedent kept a copy of the will at home and provided copies of this will to his attorney, F. Gwynn Harper, Jr., his named co-executors, and his longtime accountant in New Jersey, Joanne Linda Waxman.

Decedent had a great interest in the arts, education, and genealogy and was described by his friends as a highly educated, articulate, and meticulous person. During much of his lifetime he was an annual contributor to both Rutgers and Duke, and he established a scholarship at Rutgers for students to attend Duke. He also befriended several young men over the years, whom he personally and financially assisted in obtaining educational opportunities and employment training. One of these young men was caveator Michael Shawn Koch, who lived with decedent from June 1982 until September 1983, when he got married.

In the early 1980s decedent was diagnosed with cancer, and his health declined from that time until his death in January 1992. During the final years of his life several of his close friends would visit him in his home and perform various errands and tasks for him, including the caveators Bobby Joe Barger, Richard David Berry, Jr., and Terry Allen Henderson and his wife, Rebecca W. Henderson.

On 15 May 1985 decedent prepared and signed a handwritten document entitled "Codicil to My Will," making specific bequests to Michael Shawn Koch, Rebecca and Terry Henderson, his housekeeper, Frances T. Davenport, and several cousins. Decedent "reaffirmed" the purported codicil on 1 March 1986, by his signature.

In August 1991 decedent underwent a laryngectomy, which left him without a voice. When he was recuperating at home, several of his friends bought him a fax machine so that he could correspond

more easily. He spent much of his time after the surgery in an easy chair in his living room, surrounded by his papers, bills, mail, books, and magazines.

When decedent was hospitalized for the last time in January of 1992, his death appeared imminent, and several of his friends and relatives came to comfort him and keep him company. A few days prior to his death, several people, including Michael Koch and Nadine Rogel, went to his home and looked through his papers. Beside his easy chair they found an eight-page paper writing appearing to be a handwritten will. They read the document, which on its face revoked all previously executed testamentary documents, and put it back where they found it. Decedent died two days later.

On 9 April 1992, executrix Nadine Rogel filed the following documents for probate: (1) the attested will dated 10 March 1980, (2) the handwritten document entitled "Codicil to My Will," and (3) the eight-page purported holographic will, expressly revoking all previous wills and testaments. Subsequently, on 15 September 1992, executrix initiated a declaratory judgment action to determine whether decedent died testate and the effect of the handwritten documents. On appeal of the superior court's judgment in the matter, however, this Court found that the superior court did not have subject matter jurisdiction to determine the validity of a will by declaratory judgment. See Rogel v. Johnson, 114 N.C. App. 239, 441 S.E.2d 558, disc. review denied, 336 N.C. 609, 447 S.E.2d 401 (1994).

On 13 October 1994 the caveators and petitioners filed a Caveat and Petition for Probate in Solemn Form. Attached to the complaint were three documents: (1) the typewritten, signed and witnessed document entitled "Will"; (2) the handwritten document entitled "Codicil to My Will"; and (3) the eight-page purported holographic will. The caveat was filed on behalf of the beneficiaries under the holographic will—Bobby Joe Barger, Richard David Berry, Jr., Frances Tucker Davenport, Stephen Davenport, Terry Alan Henderson, Michael Shawn Koch, John Wilton Lanning, Jr., Thomas Cecil Laughon, Jr., and Stuart Lanyon Rogel (formerly Stuart Strunk)—alleging that the holographic will was decedent's Last Will and Testament. The caveators later amended their complaint to allege, in the alternative, that the purported codicil was a valid codicil to the attested 1980 will.

Prior to trial, respondents filed a motion to dismiss, and the caveators filed a motion for summary judgment, both of which were

denied. The caveators also filed a motion in limine requesting the court to determine that decedent's testamentary intent is not an issue in the case and that no party should refer to such intent during the course of the trial. That motion was also denied.

At the commencement of trial, respondents made an oral motion in limine requesting the court to rule that pursuant to Rule 601 of the North Carolina Rules of Evidence, the caveators or beneficiaries under the codicil and holographic will would be prohibited from testifying as to conversations they had with decedent about his will. Judge Caldwell denied the motion, noting that to establish a valid holographic will, the intent of the testator is a competent, relevant, and material fact to which the beneficiaries may testify pursuant to N.C. Gen. Stat. § 31-10(b) (1984). Upon respondents' exception to this ruling, Judge Caldwell indicated that he would consider the proffered testimony on a case-by-case basis under G.S. § 31-10(b) throughout the course of the trial.

At trial, in an attempt to show decedent's intent, the caveators' witnesses testified to conversations they had with decedent in his final years about his plans to write a new will and about specific bequests he planned to make in his new will. Respondents asserted continuing objections to all such testimony.

At the close of the caveators' evidence, both the caveators and respondents moved for directed verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure. Judge Caldwell denied both motions. At the close of all the evidence both parties renewed their motions for directed verdict, and Judge Caldwell again denied their motions. Subsequently, the jury found that the eight-page holographic will was in fact the Last Will and Testament of decedent. On 15 December 1995 Judge Caldwell entered a judgment reflecting the jury's verdict.

Respondents filed a motion for judgment notwithstanding the verdict pursuant to Rule 50(b) of the North Carolina Rules of Civil Procedure and a motion for a new trial pursuant to Rule 59(a)(8), assigning as error the admission of the caveators' testimony as to conversations they had with decedent about his will. On 15 December 1995, after considering the briefs and oral arguments of both parties, Judge Caldwell denied respondents' motions. Respondents filed a timely Notice of Appeal to the underlying judgment as well as the denial of his motions pursuant to Rules 50(b) and 59(a)(8).

IN RE LAMPARTER

[126 N.C. App. 593 (1997)]

*Tate, Young, Morphis, Bach & Taylor, L.L.P., by Terry M. Taylor and T. Dean Amos, and Hunter, Wharton & Stroupe, L.L.P., by John V. Hunter, III, for caveator appellees.*

*Maxwell, Freeman & Bowman, P.A., by James B. Maxwell and Selina S. Nomeir, for respondent appellants.*

ARNOLD, Chief Judge.

[1] Respondents first argue that the trial court erred in denying their motion for a directed verdict at the close of the caveators' evidence. They contend that the holographic writing may not, as a matter of law, be admitted to probate because it is not valid on its face. We disagree.

There are three statutory requirements to establish a valid holographic will: It must be (1) written entirely in the handwriting of the testator, (2) subscribed by the testator, or with his name written in or on the will in his own handwriting, and (3) found after the testator's death among his valuable papers or effects or placed by him in the possession of another person for safekeeping. *See* N.C. Gen. Stat. § 31-3.4 (1984). The first two elements are uncontested in this case.

In addition to the statutory requirements for a holographic will, our Supreme Court has held that it is necessary to establish testamentary intent:

> Before any instrument can be probated as a testamentary disposition there must be evidence that it was written *animo testandi*, or with testamentary intent. The maker must intend at the time of making that the paper itself operate as a will, or codicil.

*In re Will of Mucci*, 287 N.C. 26, 30, 213 S.E.2d 207, 210 (1975). *See also Stephens v. McPherson*, 88 N.C. App. 251, 362 S.E.2d 826 (1987).

> With regard, moreover, to holographic instruments, the necessary *animo testandi* must appear not only from the instrument itself and the circumstances under which it was made, but also from the fact that the instrument was found among the deceased's valuable papers after his death . . . .

*Mucci*, 287 N.C. at 30, 213 S.E.2d at 210; G.S. § 31-3.4. Respondents argue both that (1) no testamentary intent can be inferred from the holographic writing on its face and (2) the holographic writing was not found after decedent's death among his valuable papers. We find both arguments unavailing.

**IN RE LAMPARTER**

[126 N.C. App. 593 (1997)]

The holographic writing in this case expressly states in decedent's handwriting:

> I, William Smith Lanyon Lamparter, . . . being of sound and disposing mind and memory, do hereby declare, publish and make known, this as my Last Will and Testament, thereby revoking and making void any and all Wills and Testaments by me heretofore made and now disposing of the worldly and material goods of which God hath made me Steward . . . .

Respondents argue that circumstances surrounding the making of the holographic writing render this language ineffective, including evidence that the writing is not neatly and meticulously set forth, as was decedent's habit, the writing is not signed and dated, it does not dispose of decedent's entire estate, it contains inconsistent bequests, and decedent never showed the document to any witness indicating that it was his completed last will and testament.

These surrounding circumstances do not necessarily negate the express testamentary language in the holographic writing, but they at least render the instrument on its face equivocal as to testamentary intent.

> Where a holographic instrument on its face is equivocal on the question of whether it was written with testamentary intent and there is evidence that the instrument was found among the valuable papers of the deceased the *animo testandi* issue is for the jury and parol evidence relevant to the issue may be properly admitted.

*Mucci*, 287 N.C. at 31, 213 S.E.2d at 211. In this case, there was some evidence that the holographic writing was found among decedent's valuable papers. Therefore, the issue of testamentary intent was one for the jury, and the trial court did not err in denying respondents' motion for directed verdict on this basis.

[2] We likewise reject the caveators' cross-assignment of error in which they contend that the holographic writing constitutes a valid holographic will on its face. They argue that the trial court erred in denying their motion for a directed verdict because the holographic writing meets all of the statutory elements for a valid holographic will, and it bears testamentary intent on its face. As we noted above, evidence of the surrounding circumstances render the holographic writing equivocal on the issue of intent, and the question was one for

the jury. Therefore, it was not error for the trial court to deny the caveators' motion for a directed verdict.

**[3]** Respondents next argue that the trial court committed reversible error in allowing the caveators to testify about conversations they had with decedent regarding his will. This issue presents us with a case of first impression. We must determine the extent to which testimony regarding a decedent's testamentary intent is admissible to establish a valid holographic will under N.C. Gen. Stat. § 31-10(b) (1984).

Rule 601 of the North Carolina Rules of Evidence, also known as the Dead Man's Statute, disqualifies an interested person from testifying "in his own behalf or interest . . . against the executor, administrator or survivor of a deceased person . . . concerning any oral communication between the witness and the deceased person[.]" N.C. Gen. Stat. § 8C-1, Rule 601(c) (1992). In an apparent exception to Rule 601, however, G.S. § 31-10(b) provides:

> A beneficiary under a holographic will may testify to such competent, relevant and material facts as tend to establish such holographic will as a valid will without rendering void the benefits to be received by him thereunder.

Respondents contend that G.S. § 31-10(b) "was not enacted to permit beneficiaries under a holographic will to testify in violation of the Dead Man's Statute," but instead permits testimony to establish only the three statutory requirements for a holographic will set forth in G.S. § 31-3.4. They argue that because testamentary intent is not one of the three statutory requirements for a valid holographic will, the caveators' testimony regarding conversations with decedent about his testamentary intent should have been excluded pursuant to Rule 601.

The caveators correctly counter, however, that while testamentary intent is not a statutory requirement for a holographic will, it is nevertheless a necessary element to prove the validity of a holographic will. *See Mucci*, 287 N.C. at 30, 213 S.E.2d at 210. As we noted above, when a holographic instrument on its face is equivocal on the question of whether it was written with testamentary intent, and the statutory requirements are otherwise met, the testamentary intent issue "is for the jury and parol evidence relevant to the issue may be properly admitted." *Id.* at 31, 213 S.E.2d at 211. Intent to make some future testamentary disposition, however, is not sufficient to show

**IN RE LAMPARTER**

[126 N.C. App. 593 (1997)]

intent that a document itself operate as a will. *Id.* at 30, 213 S.E.2d at 210.

Clearly, the witnesses' testimony as to conversations they had with decedent about specific bequests he planned to make in a new will is not sufficient alone to show decedent's intent that the holographic writing itself operate as a will. *See id.* However, we find such testimony competent, relevant, and material under G.S. § 31-10(b) as evidence of the circumstances under which the holographic writing was made.

We hold that such testimony, coupled with Richard Berry's testimony that decedent told him on Christmas Eve of 1991 that he had finished writing his new will, is competent and probative on the issue of decedent's intent that the holographic will operate as decedent's last will and testament. Accordingly, the trial court did not err in allowing the caveators to testify about conversations they had with decedent regarding his will.

No error.

Judge COZORT concurs.

Judge WYNN dissents with a separate opinion.

Judge WYNN dissenting.

The legislature's intent in enacting § 31-3.10(b) was not to displace the well-settled rule in this jurisdiction that a beneficiary under a will may not testify as to communications with a deceased person because of their pecuniary interest in the outcome of the litigation. N.C. Gen. Stat. § 8C-1, Rule 601. *See In re Will of Lomax*, 226 N.C. 498, 39 S.E.2d 388 (1946); *In re Will of Brown*, 194 N.C. 583, 140 S.E. 192 (1927); *In re Will of Hester*, 84 N.C. App. 585, 353 S.E.2d 643, *rev'd on other grounds*, 320 N.C. 738, 360 S.E.2d 801, *rehearing denied*, 321 N.C. 300, 362 S.E.2d 780 (1987). Rather § 31-3.10(b) allows testimony with respect to the three statutory requirements for a holographic will that the document: 1) is in the testator's handwriting; 2) bears the testator's signature; and, 3) was found among his valuable papers after his death.

As the majority notes, the first two elements are not at issue in this case. Proof of the third element is significant in that it functions at least in part to show that the deceased intended the writing to be

his will. *See Mucci,* 287 N.C. at 30 (1975), (Testamentary intent must appear not only from the instrument itself and the circumstances under which it was made, but also from the fact that the instrument was found among the deceased's valuable papers.)

Whether the place of discovery is "among valuable papers or effects or in some other safe place" is a factual question, the issue being whether the deceased considered the papers valuable or the place a safe one. Thus, under § 31-3.10(b) testimony may be elicited to show that the paper was found in a safe place, but in my opinion, further allowing beneficiary to testify as to communications with the decedent is not permitted.