IN RE WILL OF H. J. STAUB. ·

(Filed 4 October, 1916.)

**1. Wills—Trials—Evidence—Questions for Jury.**

In an action to set aside a will for mental incapacity and undue influence, testimony of a witness which tends to contradict his former evidence favorable to the sufficient mental condition of the testator is competent, the truth of the matter being for the jury to determine, and it is also competent for him to testify from his own knowledge as to the mental capacity of the testator to make the will.

**2. Trials—Evidence Stricken Out—Appeal and Error—Objections and Exceptions.**

Where testimony on the trial has been stricken out by the judge at appellant's request, his exception as to its admission is without merit on appeal.

**3. Wills—Evidence—Contradictory Testimony—Undue Influence.**

In an action to set aside a will for mental incapacity and undue influence, it is competent for propounder's witness to state, on cross-examination, that the testator was at the time entirely under the dominion, direction, and control of a religious denomination which is the principal beneficiary under the will, and, as corroborative of substantive evidence of mental incapacity, the dependent condition of testator's family.

**4. Wills—Mental Incapacity—Undue Influence—Unanswered Issue—Appeal and Error—Harmless Error.**

Where a will has been caveated for mental incapacity and undue influence, and under proper evidence and instructions the jury has answered the first in favor of the caveators and left the second unanswered, exceptions to the admissibility of testimony as to undue influence become immaterial; but in this case it was proper upon the element of mental incapacity.

**5. Wills—Mental Incapacity—Undue Influence—Trials—Evidence—Questions for Jury.**

In an action to caveat a will there was conflicting evidence of mental incapacity and undue influence; that the wife of the deceased was dependent, that his daughter had supported the family except for a small portion of the deceased's income from his property; that the testator devised only a small amount of personal property and $2,500 in real estate to his family, and $20,000 to the Christian Scientist Church, which dominated his actions and of which he was a member. *Held*, sufficient for the jury under proper instructions.

**6. Same—Instructions—Burden of Proof.**

The instructions given by the court to the jury in this action to caveat a will, defining the right of the testator to dispose of his property as he pleased, applying the various phases of the testimony to the issues of mental incapacity and undue influence, defining the former, and placing the burden of proof on the caveator, are approved.

BROWN, J., dissenting.

APPEAL by propounders from *Whedbee, J.,* at May Term, 1916, of CRAVEN.

*Guion & Guion, D. L. Ward, and S. Brown Shepherd for propounders.*
*Moore & Dunn for caveators.*

CLARK, C. J.   The caveat was filed upon the ground of insufficient mental capacity and undue influence.   The issue as to undue influence was not answered by the jury and the appeal depends solely on the finding that the deceased did not have mental capacity to make a will.   The first six exceptions are to testimony brought out upon cross-examination of the witnesses for the propounders, and cannot be sustained.

The first exception is because the witness who had testified favorably as to the mental condition of the deceased was asked as to contradictory statements made by himself prior to the trial.   This was competent.

The second exception is without point, as the testimony objected to was stricken out by the court on motion of the propounders.

The third exception was to permitting the propounders' witness to state on cross-examination that from his experience and observation of the deceased he was entirely under the domination, direction, and control of the Christian Scientist people, who were the principal beneficiaries of the will.   This was competent on the third issue and also as tending to contradict this witness's testimony as to the mental capacity of the deceased to make a will.

The fourth exception is that the same witness stated on cross-examination that in his judgment the deceased was crazy and of unsound mind when he signed the will.   This was competent, *Clary v. Clary,* 24 N. C., 78, and besides, because it was in direct contradiction of the testimony of this witness, who was a witness to the will and who had stated on his examination in chief that the deceased was of sound mental condition when he signed the will.

The fifth exception was to the refusal to strike out that portion of this witness's evidence on cross-examination because on reëxamination the witness was of opinion that the deceased was of sound mind.   The witness having stated his testimony differently, both phases of it should have been presented to the jury.

The sixth exception, as to the dependent condition of the wife of the deceased, and her inability to take care of herself, was competent in corroboration of the evidence as to the mental incapacity of the defendant, since he devised the bulk of his property to the Christian Scientist people, leaving his wife and daughter, who had supported him for so many years, practically destitute.

The seventh exception was for the admission of the opinion of the witness Mrs. Bell as to the condition of her father's mind for a few

years prior to his death. The eighth and ninth exceptions, as to the influence exerted by the propounders over the deceased, it is unnecessary to consider, since the jury did not pass upon the issue as to undue influence. If they considered this testimony at all, it could have been only from the light it threw upon the issue as to mental incapacity, and for that purpose it was competent.

The tenth and eleventh exceptions were to the testimony of the daughter of the deceased that she practically supported the family, and this was competent in corroboration as tending to show the unsound mental condition of the testator in devising his property away from his wife and daughters.

The twelfth exception was to the testimony that the mind of the testator had become unsound and his conversation that of a monomaniac on the subject of Christian Science.

The prayer of the propounders to instruct the jury that the evidence was not sufficient to set the will aside was properly refused. The issue was one for the jury upon the whole evidence.

It was in evidence that the deceased did not support or provide for his family, and that his daughter paid the grocery bill and meat bill and paid the rent, and that the other children contributed to their mother's support. Though the deceased had an income of $50 per month, he contributed only $7 for the support of the family. By his will he devised the small amount of personal property he had and $2,500 in real estate to his family and $20,000 to the Christian Science Church. There was evidence as to his sanity, both pro and con, and the jury upon proper instructions found that the deceased did not have sufficient mental capacity to make the will. This was a matter within the province of the jury, and we cannot disturb it.

The judge in a very full, clear, and impartial charge, to which no exception was taken, instructed the jury, among other things, as follows:

"The fact that a man gives his property other than to his relatives and their dependents does not of itself vitiate his will, and any man who has testamentary capacity and is not unduly influenced to execute a will can give his property to any body or any one that he pleases; he can give it to individuals; he may give it to a person whom he never knew; he can give it all to a religious denomination, to any church, to any nonreligious society, to any charitable organization; he has the right to give it to one or more persons or objects to the exclusion of all others; but it is a circumstance a jury may consider in connection with other evidence in passing upon a man's mental capacity; and if you find that he has testamentary capacity, and is not influenced unduly, he has the right to give his property to any one and anywhere; that it is not illegal and not contrary to public policy. You have no right to find as a fact that this is not the will of H. J. Staub because he gave

*In re* STAUB'S WILL.

his property to the Christian Science Church, if he had the testamentary capacity and was not unduly influenced. He had the right to give it wherever he pleased, if he had the testamentary capacity and was not unduly influenced."

The court gave the prayers for instruction asked by the appellants. The court defined testamentary capacity: "A person has testamentary capacity within the meaning of the law if he has a clear understanding of the nature and extent of his act, of the kind and value of the property devised, of the persons who are the natural objects of his bounty, and of the manner in which he desires to dispose of property to be distributed"; and, further: "The law presumes that every man possesses mental and testamentary capacity, and he or they who allege that he does not possess such testamentary capacity, upon them the law throws the burden of proof to offer evidence that satisfies the jury of the absence or the lack of the possession of such mental or testamentary capacity," and that the burden was upon the caveators to show that the testator did not possess such mental capacity, adding that if the jury find that issue in the affirmative it need not pass upon the third issue as to undue influence.

Upon review of the whole case we find

No error.

BROWN, J., dissenting: I cannot agree with the majority of my brethren that no reversible error was committed on the trial of this case. This is one of those cases which naturally appeals to the sympathy of a jury, and they are naturally prone to set the will aside. Therefore, I think this Court should be very careful to see that no substantial injustice has been done to the propounders on the trial.

Upon carefully reading the record, I think that some of the assignments of error should be sustained and a new trial ordered, and I will briefly call attention to one or two of them.

The following questions and answers were permitted by the court over the propounders' objection:

The witness Cook was asked, "When you heard what that paper contained, after that, did you state that in your opinion Mr. Staub did not have his right mind when he made that paper?" Answer: "I said that if I thought I had done a thing like that, or another man did that, he was not treating his family right, and he must be crazy."

To my mind, this question and answer are plainly incompetent. The witness Cook was permitted to give his opinion of the character of the will and of the propriety and justness of the disposition which the testator had made of his property. He was permitted to say substantially that any man who would make such a will must be crazy. It is common learning that it is not for the witness to give his opinion of the

character of the will nor the wisdom and justice of the disposition of the property. That is a matter to be considered by the jury as a circumstance. In this case the witness is permitted to put himself in the place of the jury and to pass on the weight of that species of evidence. This witness occupied a position which gave him peculiar weight with the jury. He was a witness to the will, consequently, not the witness of either party, but the witness of the law, and what he states is calculated to have more weight with the jury than that of an ordinary witness.

The witness was further asked: "From your experience and observation of him, is it not a fact, in your opinion, that he was entirely under the domination, direction, and control of the Christian Science people?" Answer: "Yes, sir." It is true that the issue as to undue influence was not answered, but this testimony was well calculated to prejudice the propounders as to the issue of mental capacity and to create in the minds of the jury a hostile feeling. It is not competent for a witness to give his opinion as to whether an individual is dominated by a church or any other society, religious or otherwise. It is a matter for the jury to pass on, taking into consideration all the evidence and surrounding circumstances. The very reason that the jury is impaneled is to pass on the condition of the mind of the testator, and it is not for the non-expert witness to give his opinion as to what effect certain surroundings would have upon that mind. The witness may give his opinion as to whether a man at a certain time was sane or insane, but he cannot give his opinion upon the sufficiency of certain surroundings and conditions to produce that condition of mind.