IN THE MATTER OF THE WILL OF J. C. MORROW, DECEASED.

(Filed 31 October, 1951.)

**1. Wills § 17—**

A caveat proceeding is *in rem* to ascertain whether the paper writing purporting to be a will is in fact a testamentary disposition of property, and caveators may attack any part of the will or attack it *in toto* upon the grounds set forth.

**2. Wills § 22—**

In caveat proceedings, propounder has the burden of proving the due execution of the instrument, *i.e.,* that it was written in testator's lifetime, signed by him or by some other person in his presence and by his direction, and subscribed in his presence by two witnesses at least. G.S. 31-3.

**3. Wills § 24—**

The issue of *devisavit vel non* must be determined by the jury and may not be determined by the court even upon agreement of the parties, nor may the case be submitted upon an agreed statement of facts, nor may either party take a nonsuit.

**4. Same—**

Since the propounder has the burden of proving the due execution of the instrument, he cannot be entitled to a directed verdict in his favor on the issue of due execution, the weight and credibility of propounder's testimony being for the determination of the jury.

APPEAL by propounder from *Sharp, Special Judge,* at June Term, 1951, of RUTHERFORD.

This is a proceeding for the probate of a paper writing propounded as the last will and testament of J. C. Morrow, who died on 10 March, 1951.

The alleged will was probated in common form on 17 March, 1951, by Barney Morrow, a son, who under the purported will would take the bulk of the estate. On the same day that the paper writing was probated, the widow dissented. On 19 March, 1951, a caveat was filed by some of the heirs at law. The proceeding was thereupon transferred to the civil issue docket for trial.

At the call of the case, the three subscribing witnesses, Clark Matheny, Herman Price and Lillian Price, were, upon motion of the caveators, separated so that each witness testified in the absence of the other two. The testimony of these witnesses agreed that the paper writing was drawn and signed in the building of Matheny Motor Company in Forest City, North Carolina, but differed in other material particulars.

Clark Matheny said that about 6 o'clock in the afternoon of 22 July, 1948, J. C. Morrow came with his son, Barney, to the Matheny Motor Company and brought with him a form book; that at the request of J. C. Morrow he wrote the alleged will on the typewriter in the private office of the Motor Company, which office is adjacent to the waiting room; that he wrote the name of J. C. Morrow to the alleged will in the private office at the request of J. C. Morrow and in his presence and in the presence of Barney Morrow, Herman Price and Lillian Price; that he was the first to sign as a witness and this was done in the private office; that J. C. Morrow then took the paper out into the waiting room where the other two witnesses signed; that he and Barney remained in the private office and did not go into the waiting room until after the others had signed. The testimony of Lillian Price differed substantially in that she said that J. C. Morrow, Barney Morrow and Matheny all came out of the private office together and laid the paper on the desk in the waiting room; that she was sure that she signed as the first witness at the request of Matheny and that Matheny said he would sign later; that Matheny wrote the name of J. C. Morrow on the paper out in the waiting room.

The testimony of Herman Price was that he and his wife, Lillian, remained in the waiting room while Barney, his father and Matheny went into the private office and remained from 25 to 35 minutes; that when the paper was laid on the desk in the waiting room, the name of J. C. Morrow was not on it; that all of the signing was done on the desk in the waiting room, Lillian Price signing first, Herman Price second, and Matheny last; that J. C. Morrow just touched the pen after the others had signed; that he knew J. C. Morrow to be an educated man and could not understand why he signed by his mark.

IN RE WILL OF MORROW.

Mrs. Perry Price impeached the testimony of her brother-in-law, Herman Price, in that when he was visiting in her home, she asked him where the will was made, and he said, "It was made in the car along between the Davis Shoppe and the Post Office in Forest City." When she asked him who signed J. C. Morrow's name, he said, "All I know, I didn't know what I was signing. I didn't know it was a will at that time and if I had I would not have signed it." This witness was positive that Herman said that he and his wife signed the will in front of the Post Office.

Barney Morrow testified that he took the alleged will on the day it was made and concealed it under a brick on a sill in the barn, where it remained until the death of his father. No other member of the family knew about the paper writing or where it was located. Barney admitted that he has a criminal record.

The widow testified that immediately after the funeral she asked her son, " 'Barney, has Pa got a will made?' and he kind of dropped his head and I asked him again on Wednesday and he said, Pa had a will and he had it, and I said, 'Let the other children read it,' and he said, 'I can't,' and I said, 'Why can't you?' and he said, 'I ain't got no witnesses to it,' and I said, 'I never saw a will but what had witnesses to it,' and he said, 'My witnesses work in the cotton mill and I can't get them till 4 o'clock.' He was gone all day Thursday until 5:30 or 6:00 o'clock and he said I could see the will at the courthouse. I had an opportunity to observe my husband on July, 1948. We were living together. In my opinion, about July 22, 1948, he did not know his friends or his property, or nothing. I have lived with him and I ought to know."

There was substantial evidence on the question of mental capacity and undue influence.

The following issues were submitted: (1) Was the paper writing offered for probate as the last will and testament of J. C. Morrow signed and executed according to law? (2) Did the said J. C. Morrow have sufficient mental capacity to make and execute a will on 22 July, 1948, and at the time of the execution of said paper writing? (3) Was the execution of said paper writing procured by the undue influence of Barney Morrow as alleged? (4) Is the paper writing propounded, and every part thereof, the last will and testament of J. C. Morrow, deceased? The jury answered the first issue "No." Answers to the other issues thereupon became unnecessary.

From a judgment upon the verdict, propounder prosecutes this appeal.

*Jones & Davis for propounder, appellant.*
*Zeb C. Camp and Stover P. Dunagan for caveators, appellees.*

VALENTINE, J. In the court below the grounds upon which caveators relied were nonexecution, mental incapacity and undue influence.

In order for propounder to be successful in this proceeding, he must prove that the paper writing propounded as a will was written in the testator's lifetime, signed by him, or by some other person in his presence and by his direction, and subscribed in his presence by two witnesses at least, or the paper writing is ineffectual as a last will and testament and is not sufficient in law to give or convey any estate in real or personal property. G.S. 31-3.

The answer "No" upon the first issue is determinative of this controversy. Therefore, the only question presented by this appeal is the validity of the verdict. This requires a discussion of the procedure necessary to establish the testamentary value of a document. Such a proceeding is usually initiated by the filing of a caveat, which is a proceeding *in rem* having as its only purpose the function of ascertaining whether the paper writing purported to be a will is in fact the last will and testament of the person for whom it is propounded. This initial pleading may be so drawn as to challenge all or any part of the will and issues must be submitted accordingly. *McDonald v. McLendon,* 173 N.C. 172, 91 S.E. 1017.

In the instant case, the entire will was challenged and the court properly submitted the issues *devisavit vel non,* which drew into question the alleged will *in toto.* This constituted a demand that the alleged will be produced and probated in open court in term time, so that the parties interested, either under the paper writing or as heirs at law, could have an opportunity to attack it for the causes and upon the grounds set forth in the caveat. In such litigation the attack is upon the paper writing itself and a strict application of the law involved is necessary.

The status of such a paper writing when drawn into question by a caveat must be determined by a jury's verdict. *In re Will of Chisman,* 175 N.C. 420, 95 S.E. 769; *In re Will of Rowland,* 202 N.C. 373, 162 S.E. 897. Neither the caveators nor the propounders can waive a jury trial nor submit the case upon an agreed statement of facts for determination by the court. The judge cannot upon an agreed statement of facts which is supplemented by his own findings upon evidence establish the validity of a will in solemn form without the intervention of a jury. A jury's verdict is absolutely indispensable upon the issues "will or no will." *In re Will of Hine,* 228 N.C. 405, 45 S.E. 2d 526; *In re Will of Roediger,* 209 N.C. 470, 184 S.E. 74.

So exacting are the requirements of the law that neither the propounder nor the caveators can submit to a nonsuit, nor can a nonsuit be entered for any reason. *In re Will of Brock,* 229 N.C. 482, 50 S.E. 2d 555; *In re Will of Hine, supra; In re Hinton,* 180 N.C. 206, 104 S.E. 341; *In re*

*Westfeldt,* 188 N.C. 702, 125 S.E. 531; *In re Will of Redding,* 216 N.C. 497, 5 S.E. 2d 544.

The main complaint appearing in appellant's brief and urged by him on this appeal revolves around the contention that the "court should have charged the jury to answer the first issue 'Yes' upon the evidence." He contends that "the evidence of the formal execution of the paper writing on July 22, 1948, is so overwhelming as to leave no question of doubt about it and there is no evidence to the contrary." This argument overlooks the most important aspect of the case, that is, that the validity of the paper writing in question rests, in the first instance, upon its due execution as provided by law, and that the weight and credibility of the evidence offered for the purpose of showing due execution is for the jury to decide under appropriate instructions from the court. *In re Fuller,* 189 N.C. 509, 127 S.E. 549. It further fails to take into consideration the fact that the propounder has the burden of proving the formal execution of the will and that he must do so by the greater weight of the evidence. He must prove the paper writing *per testes* in solemn form. *In re Hedgepeth,* 150 N.C. 245, 63 S.E. 1025; *In re Will of Rowland, supra; In re Will of Chisman, supra.*

The propounder failed to carry this burden. In what particulars he failed is not a matter for us to decide. It is exclusively the province of the jury to weigh the evidence and determine its credibility and sufficiency. In so doing, it has found that propounder's evidence does not possess the probative quality necessary to warrant an affirmative answer to the first issue. Its verdict resolves the issue of due execution against the propounder and no reason appears on the record why this verdict should not stand.

We have examined the entire record, including the charge of the court, and find no reversible error. The judgment of the lower court is upheld.

No error.

The motion of caveators to dismiss the appeal is denied.