IN THE MATTER OF THE WILL OF JOHN R. JARVIS, DECEASED

No. 9124SC156

(Filed 21 July 1992)

**1. Wills § 24.1 (NCI3d)— caveat proceeding—directed verdict for propounders**

The trial court may direct a verdict for propounders in a caveat proceeding at the close of all the evidence.

**Am Jur 2d, Trial §§ 463 et seq.**

**2. Rules of Civil Procedure § 50.2 (NCI3d)— directed verdict— party with burden of proof**

A directed verdict in favor of the party with the burden of proof on the substantive issues is appropriate only if the

IN RE WILL OF JARVIS

[107 N.C. App. 34 (1992)]

credibility of the movant's evidence is manifest as a matter of law.

**Am Jur 2d, Trial §§ 463 et seq.**

3. **Wills § 20 (NCI3d) — caveat proceeding — due execution — directed verdict for propounders**
   The trial court properly directed a verdict for propounders on the issue of due execution where the nonmovant caveators rendered propounders' evidence manifestly credible as a matter of law by admitting the basic facts upon which propounders' claim rested, and propounders' evidence showed that the attorney who prepared the will signed testator's full name to the will at testator's request; testator made his own mark (an X) in the spaces designated "His mark," with the attorney guiding the pen; and the attorney and his son signed the will as attesting witnesses.

**Am Jur 2d, Trial §§ 463 et seq.; Wills §§ 210 et seq., 1021 et seq.**

**Validity of will signed by testator with the assistance of another. 98 ALR2d 824.**

4. **Wills § 22 (NCI3d) — caveat proceeding — mental capacity — directed verdict for propounders**
   The trial court properly directed a verdict for propounders on the issue of testator's mental capacity to make a will where only the natural objects of testator's bounty were devisees or legatees under the will, and the testimony of caveators' witnesses showed that, although testator was physically incapacitated from a stroke, he was mentally alert, knew his family, knew the nature and extent of his property, and knew what he wanted to leave to his survivors.

**Am Jur 2d, Trial §§ 463 et seq.; Wills §§ 54 et seq., 960 et seq.**

5. **Wills § 21.4 (NCI3d) — caveat proceeding — undue influence — directed verdict for propounders**
   The trial court properly directed a verdict for propounders on the issue of undue influence where caveators failed to put

IN RE WILL OF JARVIS

[107 N.C. App. 34 (1992)]

on any evidence that testator's will was overborne or any evidence as to the identity of the purported dominant influence.

**Am Jur 2d, Trial §§ 463 et seq.; Wills §§ 389 et seq., 860 et seq.**

APPEAL by caveators from judgment entered 20 December 1990 by *Judge Charles C. Lamm, Jr.*, in MADISON County Superior Court. Heard in the Court of Appeals 13 November 1991.

*Roberts Stevens & Cogburn, P.A., by Max O. Cogburn, for caveator-appellants Kenneth R. Jarvis and James R. Jarvis.*

*Morris, Bell & Morris, P.A., by William C. Morris, Jr., for propounder-appellees Mozelle H. Jarvis and Jack M. Jarvis.*

PARKER, Judge.

Caveators in this proceeding oppose probate of a paper writing dated 6 July 1977, purporting to be the Last Will and Testament of John R. Jarvis, on the grounds of improper execution under N.C.G.S. § 31-3.3, testator's mental incapacity and undue influence. Caveators are James R. Jarvis and Kenneth R. Jarvis, the two older sons of deceased. Propounders are the widow, Mozelle H. Jarvis, and the youngest son, Jack M. Jarvis, who still lived with his parents at the time of John's death in December 1986. The paper writing leaves John's entire estate to his wife, if she survives him.

Both propounders and caveators presented witnesses at the caveat proceeding. Caveators appeal from denial of their motion for directed verdict under Rule 50(a) of the North Carolina Rules of Civil Procedure, made at the close of propounders' evidence, on the ground that propounders failed to prove due execution of the paper writing. Caveators also appeal from grant of directed verdict in favor of propounders on the issues of due execution, mental capacity and undue influence.

[1] The question whether in a caveat proceeding a judge may decide, upon propounders' motion for directed verdict pursuant to N.C.G.S. § 1A-1, Rule 50(a), that caveators' evidence on a contested issue is legally insufficient to go to the jury has not been specifically addressed since enactment of the Rules of Civil Procedure in 1967. We hold that the trial court may direct a verdict for propounders in a caveat proceeding at the close of all evidence,

where appropriate; and the court in this case properly directed a verdict on the issues of due execution, mental capacity and undue influence.

The rule applicable in caveat proceedings was succinctly stated in *In re Will of Morrow*, 234 N.C. 365, 67 S.E.2d 279 (1951).

> The status of such a paper writing when drawn into question by a caveat must be determined by a jury's verdict. Neither the caveators nor the propounders can waive a jury trial nor submit the case upon an agreed statement of facts for determination by the court. The judge cannot upon an agreed statement of facts which is supplemented by his own findings upon evidence establish the validity of a will in solemn form without the intervention of a jury. A jury's verdict is absolutely indispensable upon the issues "will or no will."
>
> So exacting are the requirements of the law that neither the propounder nor the caveators can submit to a nonsuit, nor can a nonsuit be entered for any reason.

*Id.* at 368, 67 S.E.2d at 281 (citations omitted).

Numerous cases support the proposition that where there is a caveat, there can be no probate without a jury verdict. *In re Will of Redding*, 216 N.C. 497, 5 S.E.2d 544 (1939); *In re Will of Westfeldt*, 188 N.C. 702, 125 S.E. 531 (1924); *In re Will of Hinton*, 180 N.C. 206, 104 S.E. 341 (1920); *In re Will of Hodgin*, 10 N.C. App. 492, 179 S.E.2d 126 (1971). *Cf. In re Will of Ledford*, 176 N.C. 610, 97 S.E. 482 (1918). In certain cases, a peremptory instruction has been held appropriate on particular issues. *In re Will of Simmons*, 268 N.C. 278, 150 S.E.2d 439 (1966) (peremptory instruction for propounder where no evidence of undue influence); *In re Will of Perry*, 193 N.C. 397, 137 S.E. 145 (1927) (peremptory instruction for caveators where no evidence of testamentary intent); *In re Will of Bennett*, 180 N.C. 5, 103 S.E. 917 (1920) (same).

This body of very well settled law was reconsidered and modified in *In re Will of Mucci*, 287 N.C. 26, 213 S.E.2d 207 (1975), an appeal from a directed verdict in favor of caveators on the issue of testamentary disposition. The Court of Appeals reversed, holding that even though there was no evidence of testamentary intent, the issue whether the letter was a codicil had to be resolved by the jury on a peremptory instruction. *In re Will of Mucci*, 23 N.C.

App. 428, 209 S.E.2d 332 (1974). The Supreme Court, reversing the Court of Appeals, held:

> Where, as here, propounder fails to come forward with evidence from which a jury might find that there has been a testamentary disposition it is proper for the trial court under Rule 50 of the Rules of Civil Procedure to enter a directed verdict in favor of caveators and adjudge, as a matter of law, that there can be no probate.

*Mucci*, 287 N.C. at 36, 213 S.E.2d at 214. Moreover, *Mucci* approved entry of a directed verdict "[r]ather than direct[ing] or peremptorily instruct[ing] the jury to do what is essentially a mechanical act." *Id.* at 37, 213 S.E.2d at 214.

Hence *Mucci* makes clear that where no factual dispute exists and the paper writing purporting to be a will does not as a matter of law meet the criteria for testamentary disposition, probate is defeated, and the court may direct a verdict on that issue which ends the inquiry. The questions before this Court in the present case are whether the trial court may direct a verdict for propounders and admit the will to probate (i) on the issue of due execution where there is no factual dispute as to the manner in which the paper writing was executed and (ii) on the remaining issues when the caveators' evidence is insufficient as a matter of law to support a jury verdict.

The approach in *Mucci* is but an application of the standards under which a trial judge must decide a motion for directed verdict. In a civil jury trial a Rule 50 motion is the exclusive device for challenging the legal sufficiency of nonmovant's evidence to go to the jury. *Creasman v. Savings & Loan Assoc.*, 279 N.C. 361, 183 S.E.2d 115 (1971), *cert. denied*, 405 U.S. 977, 31 L.Ed.2d 252 (1972). The evidence of nonmovant must be considered in the light most favorable to him, giving nonmovant the benefit of all reasonable inferences that may be drawn from the evidence in his favor. *West v. Slick*, 313 N.C. 33, 326 S.E.2d 601 (1985). Any conflicts, inconsistencies or contradictions in the evidence are to be resolved in nonmovant's favor. *Rappaport v. Days Inn*, 296 N.C. 382, 250 S.E.2d 245 (1979).

[2] An even more specialized rule governs grant of directed verdict in favor of a party with the burden of proof. This rule dictates that a directed verdict in favor of the party with the burden of

proof on the substantive issues would only be appropriate if the credibility of movant's evidence is "manifest as a matter of law." See *Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979). *Burnette* requires that the evidence supporting directed verdict for a movant with the burden of proof on an issue so clearly establish the fact in issue that no reasonable inferences to the contrary can be drawn. *Id.* "[W]hile credibility is generally for the jury, courts set the outer limits of it by preliminarily determining whether the jury is at liberty to disbelieve the evidence presented by movant." *Id.* at 538, 256 S.E.2d at 396.

[3] In a caveat proceeding propounders have the burden of proof on the issue of due execution. *In re Will of Morrow*, 234 N.C. 365, 67 S.E.2d 279 (1951). On the issue of due execution, we find directed verdict for propounders was proper in the present case in that caveators as nonmovants "establish[ed] proponent's case by admitting the truth of the basic facts upon which the claim of proponent" rested. *Burnette*, 297 N.C. at 537, 256 S.E.2d at 396. *Burnette* specifically states that such a situation renders movant's evidence manifestly credible as a matter of law. Caveators' sole attack on due execution of the paper writing was an alleged failure to have two attesting witnesses as required by N.C.G.S. § 31-3.3. Caveators argue that one of the two "attesting" witnesses also signed the name of the testator on the paper writing. In making this argument caveators have admitted, however, that two persons who represented themselves to have been attesting witnesses, and who both testified at the caveat proceeding, did in fact at least attempt to sign in that capacity. A further part of caveators' argument is the assertion that "John R. Jarvis did not sign" the paper writing but that his name was signed for him by one of the so-called attesting witnesses. Contrary to caveators' two interrelated arguments on the issue of formal execution, propounders' evidence showed that the paper writing had two attesting witnesses and the testator's own signature was present on the paper writing.

The paper writing was prepared by attorney Joseph Huff in late June or early July 1977. Huff testified that John and Mozelle Jarvis had come to his office for advice about making their Wills and he had suggested reciprocal Wills. Huff had prepared a prior Will for John Jarvis in 1972. As a result of a physically disabling stroke in 1970, John's communications with Huff were limited to saying "yes" or "no" and gesturing with his arms, head and shoulders. Huff testified that John had no difficulty understanding the lawyer's

IN RE WILL OF JARVIS

[107 N.C. App. 34 (1992)]

advice in mid-1977 and that John had usually taken Huff's advice on other matters. Huff testified that John "could hear, he could do everything except talk." "[T]he only inability he had was to speak." During their meeting Huff also told John that Mozelle, who was younger than John and in apparent good health, was likely to outlive him. When Huff asked John if John wanted Mozelle to be "taken care of" in the Will, John very emphatically indicated that was his desire.

John and Mozelle returned to Huff's office on 6 July for the execution of the paper writing. Although John's right side had become paralyzed from the stroke seven years earlier, leaving him unable to write, he could do some walking by dragging his right foot and also managed steps with difficulty. Huff gave John a copy of the proposed Will to read through, which John did "for 20 or 30 minutes" in Huff's reception room, signaling Huff that he was finished by knocking on the office door. Huff testified that he did not show the paper writing to Mrs. Jarvis, although she had stayed with her husband as he silently read over the proposed Will. Upon his return to Huff's office and in response to Huff's leading questions, John indicated he had read the Will, it was as John intended and John was satisfied. Then Huff went over the Will "item by item" with John, reading it aloud and asking after every item if that was exactly what John wanted to do. Each time John said "yes."

In the presence of Huff and Huff's son, then a law student, the elder Huff asked John if he wanted them to attest to the Will. John said he did. In the witnesses' presence John published the paper writing as his Will. Huff asked if John would like Huff to sign John's full name, which Huff then did. Then John came around behind Huff to make his own mark (an "X"), using his non-paralyzed left hand, in the space designated "His mark" on each of the three pages of the paper writing. Huff and his son both saw John making his mark, with Huff guiding the pen.

> [John] held [the pen], I mean he actually, he just didn't touch it, he held it. I have had many Wills executed by a mark, anybody who has practiced law in this country has, and I think he had the firmest grip of anybody I have come across.

Huff testified he had been practicing law for fifty years. Huff and his son then signed as attesting witnesses at the end of the paper writing. Huff's son testified similarly to the elder Huff, including

the detail that John Jarvis himself had "made the actual mark" on each of the three pages.

This Court has recognized that the validity of an instrument is not affected by the testator's receiving "physical assistance in making his mark." *In re Will of King*, 80 N.C. App. 471, 476, 342 S.E.2d 394, 396, *disc. rev. denied*, 317 N.C. 704, 347 S.E.2d 43 (1986). In sum, caveators put on no evidence of noncompliance with the formalities required by N.C.G.S. § 31-3.3. As the manifestly credible evidence showed both that John Jarvis "signed" a paper writing he published as his Will and that two witnesses present in the same room attested that signature, we overrule caveators' assignments of error based on the execution of the paper writing.

[4] On the issues of mental capacity and undue influence, caveators assign error to these conclusions in the trial court's judgment:

3) [T]here is no evidence sufficient to be considered by the jury that the said John R. Jarvis did not possess sufficient mental capacity to execute a valid last will and testament; and

4) [T]here is no evidence sufficient to be considered by the jury that John R. Jarvis' signature or execution of the said will was obtained by unlawful and undue influence exerted upon him[.]

On both these issues caveators had the burden of proof. *In re Will of Simmons*, 268 N.C. 278, 150 S.E.2d 439 (1966) (undue influence); *In re Will of Pridgen*, 249 N.C. 509, 107 S.E.2d 160, 75 A.L.R.2d 312 (1959) (lack of mental capacity).

Rather than meeting the burden of showing Jarvis' mental disability, caveators' own evidence supported the legal presumption that "every man possesses mental and testamentary capacity." *In re Staub's Will*, 172 N.C. 138, 141, 90 S.E. 119, 122 (1916).

A person has sufficient mental capacity to make a will . . . if he (1) comprehends the natural objects of his bounty, (2) understands the kind, nature and extent of his property, (3) knows the manner in which he desires his act to take effect, and (4) realizes the effect his act will have upon his estate.

*In re Will of Shute*, 251 N.C. 697, 699, 111 S.E.2d 851, 853 (1960) (citations omitted). Caveators' evidence, discussed below, demonstrated the existence of Jarvis' mental capacity under the

factors detailed in *Shute* rather than establishing the lack thereof. For this reason the trial court did not err by deciding not to submit the issue of mental capacity to the jury.

First, caveators failed to point to any term in the paper writing itself suggesting that John Jarvis did not comprehend "the natural objects of his bounty" or the nature and kind of his property. His wife, who had been caring for John in his physically disabled condition for many years, takes John's entire estate under the terms of the Will. Had Mozelle predeceased John, the family home place and all lands on one side of an identified road were to go to son Jack and the rest of the real property, lying on the other side of said road, to sons James and Kenneth. Caveators admitted in their testimony that the land contingently devised to them was at least twenty-five acres.

Moreover, had Mozelle died first, Jack would have received certain specifically designated items from John's personal estate, with the residue given to James, Kenneth and Jack in equal shares. Mozelle is named executrix; in the event she died before John, Jack is named executor. The paper writing makes no bequests other than those here enumerated, except for contingent gifts to any deceased son's "lawful, living issue." John and Mozelle Jarvis had no other children. Hence, all the members of John's immediate family and only those persons, the natural objects of his bounty, are devisees or legatees under the paper writing.

Second, caveators presented four witnesses on the issue of mental capacity whose testimony so clearly establishes John's mental capacity under the *Shute* test that no reasonable inferences to the contrary could be drawn. *See Burnette*, 297 N.C. at 536, 256 S.E.2d at 395. Given that testimony, the presumption in favor of testator's mental capacity was, in effect, unrebutted and the trial court properly directed a verdict for propounders on this issue.

Caveators' first witness on alleged lack of mental capacity stated that he doubted John's capacity to understand "what [the Will] was" but then added "I just don't know." The same witness admitted that John knew what and where his property was, knew his wife and children, could hear and understand, and would have known what he wanted to leave to his survivors. Another witness, John's nephew, testified he did not "think [John] did have" the mental capacity to make a Will; but the same witness was also sure John knew his wife, sons and others and "supposed" John

IN RE WILL OF JARVIS

[107 N.C. App. 34 (1992)]

also knew his property. Asked the basis of his opinion on lack of capacity, the nephew replied:

> A. Because he was like a kid, he didn't understand. How could you tell if he understood, he couldn't talk.

> Q. Okay. You tell me what he didn't understand?

> A. *I don't know what he didn't understand. I don't know what he did understand.*

> Q. Then you can't testify then of your own knowledge what his understanding was, can you?

> A. No, sir. I don't know . . . .

(Emphasis added.) Thus, both these witnesses were equivocal on the ultimate issue, lack of mental capacity; and both witnesses testified to the effect that John was mentally alert and knew his family, immediate and extended, and his property.

The other two witnesses were clearly not disinterested. Son Kenneth's mere opinion that his father lacked mental capacity was unsupported by evidence other than Kenneth's explanation: "I'm saying due to the stroke, yeah." However, Kenneth's testimony about the effects of that stroke went to the father's loss of physical abilities rather than any mental disabilities. Son James' opinion of mental incapacity was based on a single incident around 1975 when his father had expressed no interest in driving to a part of his property where James thought "the fence looked like it had been moved." On cross-examination James admitted his father knew the location of his property. Both sons testified that John knew the members of his family. None of this testimony supports any reasonable inference that John lacked the mental capacity to make a valid Will. The directed verdict in favor of propounders was, therefore, correct.

[5] Finally, we consider the assignment of error based on the court's failure to send the issue of undue influence to the jury.

> [U]ndue influence is a fraudulent, overreaching or dominant influence over the mind of another which induces him to ex-ecute a will . . . which he would not have executed otherwise. Or, to put it another way, it means the exercise of an improper influence over the mind and will of another to such an extent

that his professed act is not that of a free agent, but in reality is the act of the third person who procured the result.

*In re Will of Franks*, 231 N.C. 252, 260, 56 S.E.2d 668, 674-75 (1949). Caveators not only failed to put on any evidence that John's will was overborne, but they also failed to put on any evidence as to the identity of the purported dominant influence. Thus, there were no issues of credibility for a jury to resolve. *See, e.g., In re Will of Simmons*, 268 N.C. 278, 150 S.E.2d 439 (1966). This final assignment of error is overruled.

For the foregoing reasons we affirm the judgment of the trial court.

Affirmed.

Judges GREENE and WYNN concur.