IN THE MATTER OF THE WILL OF LOUELLA OVERTON SMITH

No. COA02-607

(Filed 5 August 2003)

**Wills— caveat proceeding—directed verdict—premature**

A directed verdict for caveators on the issue of undue influence was premature in a caveat proceeding because it was granted prior to the close of all the evidence.

Appeal by propounders from judgment dated 22 October 2001 and orders filed 2 October 2001 and 15 October 2001 by Judge Narley L. Cashwell in Superior Court, Durham County. Heard in the Court of Appeals 13 February 2003.

*Newsom, Graham, Hedrick & Kennon, P.A., by Josiah S. Murray, III and John C. Rogers, III, for caveators-appellees.*

*Glenn, Mills & Fisher, P.A., by Robert B. Glenn, Jr. and Carlos E. Mahoney, for propounders-appellants.*

McGEE, Judge.

This case arises out of a will caveat to the last will and testament of Louella Overton Smith (testatrix). Testatrix's husband died in 1978 and testatrix suffered a heart attack in February 1997.

Ronald Coulter (Coulter), an attorney, prepared several instruments dated 11 September 1998, which testatrix executed. Testatrix executed: (1) a will (September 1998 will); (2) a power of attorney appointing her daughter, Betty Poole, as attorney-in-fact for testatrix; and (3) a health care power of attorney appointing Betty Poole and testatrix's son, Wallace Smith, as joint health care agents for testatrix. The 1998 will provided for an approximately equal division of testatrix's estate among her children, Betty Poole, Wallace Smith, and Peggy Scarboro. The 1998 will nominated Wallace Smith and Betty Poole's husband, Kenneth Poole, as co-executors.

In March 1999, Wallace Smith took testatrix to Coulter and asked him to prepare a new power of attorney for testatrix. Coulter refused. Wallace Smith telephoned another lawyer, Ruth Hammer (Hammer), about preparing a new power of attorney for testatrix. Wallace Smith took testatrix to see Hammer on 16 March 1999. Hammer prepared a new power of attorney, which testatrix executed, naming Garland

**IN RE WILL OF SMITH**

[159 N.C. App. 651 (2003)]

Weathers (Weathers), testatrix's brother-in-law, as testatrix's attorney-in-fact. Weathers was an accountant and had prepared Wallace Smith's tax returns for twenty years. Testatrix signed a new health care power of attorney on 4 June 1999 which was drafted by Hammer, naming Wallace Smith as her sole health care agent and Weathers as her alternate health care agent. Hammer consulted with testatrix alone during the drafting and creation of each of testatrix's estate documents.

At trial of the will caveat, Hammer testified that although she did not know about all of testatrix's medical records, she did receive and review a report by Dr. Marvin P. Rozear (Dr. Rozear) from 27 January 1999, prior to drafting a new will for testatrix (the June 1999 will). In Dr. Rozear's report, Dr. Rozear concluded that testatrix was "overtly demented" and the report detailed numerous and severe cognitive deficiencies of testatrix.

Wallace Smith took testatrix to Hammer's office on 10 June 1999 where testatrix executed the will. The June 1999 will disinherited testatrix's daughters, Betty Poole and Peggy Scarboro, except for a bequest of $100.00 to each, leaving virtually testatrix's entire estate to her son, Wallace Smith. The will named Weathers as executor and also as a contingent beneficiary.

Weathers filed a special proceeding dated 30 June 2000 seeking payment from testatrix of $14,690 for services rendered as testatrix's attorney-in-fact during the period of 1 June 1999 to 31 March 2000. Hammer represented Weathers in that special proceeding until replaced by propounders' counsel in this action.

Wallace Smith and Weathers placed testatrix in the Carver Living Center in Durham, North Carolina on 1 February 2000, where testatrix resided until her death on 3 November 2000.

Testatrix's June 1999 will was admitted to probate in common form on 4 December 2000. Weathers filed an application for probate and letters testamentary, as executor of testatrix's will. Betty Poole and Peggy Scarboro (caveators) filed a caveat to the June 1999 will on 19 December 2000 alleging, *inter alia*, that testatrix lacked testamentary capacity and was subjected to undue influence in the execution of the June 1999 will. Attached to the caveat was an affidavit of Dr. Rozear in which he stated that at all times from and after 3 February 1999 testatrix was "highly susceptible to influence from others."

**IN RE WILL OF SMITH**

[159 N.C. App. 651 (2003)]

A hearing was held and an order entered on 12 February 2001 concerning the alignment of all persons interested in testatrix's estate and listing Weathers and Wallace Smith as the propounders in the caveat proceeding. Propounders filed a motion to dismiss in part the caveat proceeding, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), which was denied in an order filed 25 May 2001. Caveators filed two sets of requests for admissions to which Wallace Smith filed responses.

Caveators filed on 6 September 2001 a motion to compel the disclosure of privileged communications between testatrix and her treating physicians, pursuant to N.C. Gen. Stat. § 8-53. Propounders filed a verified response to caveators' motion to compel on 13 September 2001, asking the trial court: to prohibit counsel for the caveators from having *ex parte* contact with the treating physician of testatrix without the express consent of the executor, to compel counsel for caveators to fully disclose the substance of all *ex parte* conversations he had with testatrix's treating physician, and that all information and opinions obtained as a result of *ex parte* communications between testatrix's treating physician and counsel for caveators be excluded from evidence at trial. The trial court entered an order on 2 October 2001 granting caveators' motion to compel disclosure and denying propounders' motions.

Propounders filed a motion *in limine* seeking to prohibit caveators from offering the testimony of Dr. Rozear because of unauthorized *ex parte* contacts between Dr. Rozear and counsel for caveators. The trial court denied propounders' motion *in limine* without prejudice.

The trial of the caveat proceeding began on 17 October 2001. Propounders called four witnesses to testify: (1) Ruby Gardner, the assistant clerk of superior court in Durham County; (2) Hammer, the attorney who drafted the June 1999 will; (3) Bonnie Lou Picard, a witness to the execution of the June 1999 will; and (4) Tim Moore, another witness to the execution of the June 1999 will. Among the documents propounders offered into evidence was the June 1999 will. Propounders then rested.

After propounders rested, caveators filed a motion for directed verdict on the issue of undue influence. Before the trial court ruled on caveators' motion for directed verdict, propounders verbally moved for leave to reopen their case.

The trial court entered a final judgment as to the caveat on 22 October 2001 denying propounders' motion for leave to reopen, granting caveators' motion for directed verdict, and ordering that the probate of the common form of the June 1999 will be set aside.

Propounders filed notice of appeal of: the trial court's final judgment in the caveat proceeding, the denial of propounders' motion *in limine*, and the 2 October 2001 order denying propounders' motion with respect to the *ex parte* contacts between Dr. Rozear and counsel for caveators. Pursuant to an order entered by the trial court on 26 February 2002, Weathers was permitted to resign as executor of testatrix's estate. This Court entered an order 13 June 2002 allowing Weathers to withdraw as a party to this appeal, leaving only Wallace Smith as a propounder on this appeal.

Propounder Wallace Smith argues that the trial court erred in granting caveators' motion for a directed verdict. Motions for directed verdict have generally been deemed improper in caveat proceedings. *In re Will of Ellis*, 235 N.C. 27, 32, 69 S.E.2d 25, 28 (1952) (caveat proceeding "must proceed to judgment, and a motion for judgment as of nonsuit, or for directed verdict will not be allowed"); *Burney v. Holloway*, 225 N.C. 633, 636, 36 S.E.2d 5, 7 (1945) ("Since a proceeding to probate a will in common form is *in rem*, it has been held—as far as we know without exception in this jurisdiction—that when the issue of *devisavit vel non* has been raised, the proceeding is not subject to nonsuit at the instance of the propounders or other parties concerned."); and *In re Will of Jarvis*, 107 N.C. App. 34, 37, 418 S.E.2d 520, 522 (1992), *aff'd in part, reversed in part*, 334 N.C. 140, 430 S.E.2d 922 (1993) (citing cases supporting this traditional view).

However, in *In re Will of Mucci*, 287 N.C. 26, 213 S.E.2d 207 (1975), our Supreme Court held that the caveators in that case could move for directed verdict on the issue of whether the propounders offered sufficient evidence of testamentary disposition. The Court in *Mucci* stated:

Where, as here, propounder fails to come forward with evidence from which a jury might find that there has been a testamentary disposition it is proper for the trial court under Rule 50 of the Rules of Civil Procedure to enter a directed verdict in favor of the caveators and adjudge, as a matter of law, that there can be no probate.

*Id.* at 36, 213 S.E.2d at 214. The Court reasoned that "[r]ather than direct or peremptorily instruct the jury to do what is essentially a mechanical act the better practice is for the trial court to enter a directed verdict pursuant to Rule 50 of the Rules of Civil Procedure." *Id.* at 37, 213 S.E.2d at 214. Our Supreme Court thereby held that where a propounder fails to present evidence from which a jury might find that there has been a testamentary disposition, the court may enter a directed verdict in favor of the caveators on that issue. *Id.*

Our Court considered in *In re Will of Jarvis*, the issue of whether a trial court may direct a verdict for the propounders "(i) on the issue of due execution where there is no factual dispute as to the manner in which the paper writing was executed and (ii) on the remaining issues when the caveators' evidence is insufficient as a matter of law to support a jury verdict." *Jarvis*, 107 N.C. App. at 38, 418 S.E.2d at 523. This Court held that "the trial court may direct a verdict for [the] propounders in a caveat proceeding *at the close of all evidence*, where appropriate." *Id.* at 36-37, 418 S.E.2d at 522 (emphasis added). The Supreme Court, while reversing the case in part on the issue of sufficiency of the evidence, affirmed the central holding of this Court's opinion as to the appropriateness of allowing motions for directed verdict by the propounders at the close of all evidence. *In re Jarvis*, 334 N.C. 140, 430 S.E.2d 922 (1993). *See also In re Will of Sechrest*, 140 N.C. App. 464, 468, 537 S.E.2d 511, 514 (2000), *disc. review denied*, 353 N.C. 375, 547 S.E.2d 16 (2001) (allowing the propounders to move for directed verdict at the close of all evidence on the issues of undue influence and testamentary capacity); *In re Will of Jones*, 114 N.C. App. 782, 443 S.E.2d 363, *disc. review denied*, 337 N.C. 693, 448 S.E.2d 526 (1994) (allowing the propounders to move for directed verdict at the close of all evidence on the issues of undue influence and testamentary capacity); *In re Will of Penley*, 95 N.C. App. 655, 383 S.E.2d 385, *disc. review denied*, 326 N.C. 48, 389 S.E.2d 93 (1990) (acknowledging the propriety of the propounders moving for directed verdict at the close of all evidence in a caveat proceeding but denying that motion based on the evidence).

In summary, although motions for directed verdict have not generally been granted in caveat proceedings, our Courts have carved out exceptions to this traditional rule, including: (1) the propounders may move for directed verdict on the issue of undue influence and testamentary capacity at the close of all the evidence; (2) the propounders may move for directed verdict on the issue of whether a

validly executed will exists at the close of all evidence; and (3) the caveators may move for directed verdict at the close of the propounders' case on the issue of whether a will is validly executed.

Caveat proceedings are unique in nature, as explained by our Supreme Court in *In re Will of Brock*, 229 N.C. 482, 50 S.E.2d 555 (1948):

> It is not a civil action, as classified in the Code of Civil Procedure, but a special proceeding *in rem* leading to the establishment of the will as a testamentary act under the issue *devisavit vel non.* . . . Often this issue is subdivided, according to the angle or nature of the attack, into ancillary issues, the most common of which are those relating to undue influence and testamentary capacity; but every caveat to a will leads to the simple inquiry we have mentioned, *devisavit vel non,* and the rules of procedure are framed with reference to that feature.

*Id.* at 487, 50 S.E.2d at 558 (citations omitted). *See generally In re Will of Barnes*, 157 N.C. App. 144, 579 S.E.2d 585 (2003) (when the propounders presented evidence of the validity of the probated will in the first stage of the trial, followed by the caveators' evidence of undue influence and lack of testamentary capacity, the propounders were allowed to present evidence in response to these challenges by the caveators).

Our Courts have continued to treat caveat proceedings differently under the North Carolina Rules of Civil Procedure. *See, e.g., In re Will of Dunn*, 129 N.C. App. 321, 327, 500 S.E.2d 99, 103, *disc. review denied*, 348 N.C. 693, 511 S.E.2d 645 (1998) (declining to apply the implied waiver provisions of N.C. Gen. Stat. § 1A-1, Rule 49(c) to will caveat proceedings); *In re Will of Krantz*, 135 N.C. App. 354, 358 n.2, 520 S.E.2d 96, 99 n.2 (1999), *disc. review denied*, 351 N.C. 356, 542 S.E.2d 212 (2000) (recognizing, without deciding, the possibility that summary judgment under N.C. Gen. Stat. § 1A-1, Rule 56 may not be appropriate in caveat proceedings).

In addition, when the party with the burden of proof moves for a directed verdict, a specialized rule applies, dictating that such a directed verdict "would only be appropriate if the credibility of movant's evidence is 'manifest as a matter of law.'" *Jarvis*, 107 N.C. App. at 38-39, 418 S.E.2d at 523 (quoting *Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979)). We note that the caveators in a will caveat proceeding continue to bear the burden of proof on the issue of undue influence despite any presumptions that may arise in

their favor. *In re Will of Atkinson,* 225 N.C. 526, 530-31, 35 S.E.2d 638, 640 (1945).

In consideration of the above discussion, a motion on the issue of undue influence is inappropriate by caveators at this early stage in the proceedings. Therefore, the trial court erred in directing a verdict for caveators on the issue of undue influence prior to the close of all the evidence in the caveat proceeding. We remand this matter to the trial court for further proceedings.

We need not address propounder's remaining assignments of error in view of our decision above. We specifically note that we do not address at this time propounder's challenge to the trial court's denial of propounder's motion *in limine,* on the issue of whether Dr. Rozear's testimony was admissible, because the trial court denied the motion without prejudice, and at the time caveators moved for directed verdict, caveators had not attempted to introduce the challenged evidence. The trial court did not rule on this issue and it would be premature for us to presently consider propounder's assignments of error relating to that evidence.

Reversed and remanded.

Judges HUDSON and STEELMAN concur.